**Vera Mae HOPKINS, Plaintiff–Appellant,**

v.

**AT & T GLOBAL INFORMATION SOLUTIONS COMPANY, formerly known as NCR Corporation, Defendant–Appellee.**

No. 96–1363.

United States Court of Appeals, Fourth Circuit.

Argued Oct. 30, 1996.

Decided Jan. 24, 1997.

**154**

**ARGUED:** R. Vance Golden, III, Parkersburg, West Virginia, for Appellant. Julie D. Gallagher, Corporate Section, Law Department ECD-2, AT & T Global Information Solutions Company, Dayton, Ohio, for Appellee. **ON BRIEF:** Janice Powell Epperly, Huddleston, Bolen, Beatty, Porter & Copen, Huntington, West Virginia, for Appellee.

Before WILLIAMS and MICHAEL, Circuit Judges, and DOUMAR, Senior United States District Judge for the Eastern District of Virginia, sitting by designation.

Affirmed by published opinion. Judge WILLIAMS wrote the opinion, in which Judge MICHAEL and Senior Judge DOUMAR joined.

## OPINION

WILLIAMS, Circuit Judge:

Vera Hopkins brought suit against her ex-husband's former employer, AT & T Global Information Solutions (AT & T), under the Employee Retirement Income Security Act (ERISA), *see* 29 U.S.C.A. §§ 1055 and 1056 (West Supp.1996), complaining that AT & T had not complied with a Qualified Domestic Relations Order (QDRO) giving her rights in her ex-husband's pension. Specifically, Vera Hopkins contends that she, and not her ex-husband's current spouse, is entitled to the pension benefits that will be paid to Mr. Hopkins's spouse at his death. AT & T, arguing that Vera Hopkins's court order is not a QDRO, moved for summary judgment. Finding that the pension benefits payable to the surviving spouse vested in Mr. Hopkins's current spouse upon his retirement, the district court determined that Vera Hopkins's court order was not a QDRO. Accordingly, the district court granted AT & T summary judgment. Finding no error, we affirm.

### I.

Paul Hopkins and Vera Hopkins, who married in 1960, were divorced in 1986. In the divorce order, Mr. Hopkins's pension was deemed a marital asset; nevertheless, Vera Hopkins was not awarded a portion of the pension in the equitable distribution of the marital assets. Instead, Mr. Hopkins was ordered to pay Vera Hopkins alimony. After the divorce, Mr. Hopkins married Sherry Hopkins, to whom he remains married.

To collect the alimony, Vera Hopkins obtained a judgment allowing her to attach Mr. Hopkins's wages. This method of collecting alimony, both current and arrearage, continued until Mr. Hopkins's retirement in 1993, when the wages and attachments ceased. Upon Mr. Hopkins's retirement, he became eligible for pension benefits under a plan operated by AT & T. Pursuant to ERISA and the Retirement Equity Act, pension benefits are generally paid in the form of a qualified joint and survivor annuity.[1] *See* 29

---

1. If the participant dies prior to retirement, pension benefits are paid as a preretirement survivor annuity. *See* 29 U.S.C.A. § 1055(e).

U.S.C.A. § 1055. Under the joint and survivor annuity, Mr. Hopkins receives a fixed income for life (Pension Benefits), and if his spouse survives him, she will receive 50% of that fixed income for the remainder of her life (Surviving Spouse Benefits).

In August of 1994, Vera Hopkins obtained a judgment against Mr. Hopkins for $15,270.66 in past-due alimony. No longer able to attach Mr. Hopkins's wages, Vera Hopkins sought a QDRO, which would enable her to collect this money, and current alimony, from her ex-husband's pension. In response to a Family Law Master's Recommended Order, the Circuit Court of Wood County, West Virginia, ordered that Vera Hopkins be made the alternate payee of Mr. Hopkins's Pension Benefits, as provided in 29 U.S.C.A. §§ 1055 and 1056. In addition, the Circuit Court of Wood County ordered that Vera Hopkins, and not Sherry Hopkins, be made the payee of the Surviving Spouse Benefits, as provided in 29 U.S.C.A. §§ 1055 and 1056.

The Wood County Circuit Court's order was later separated into two orders, the first ordering monthly payments to Vera Hopkins from the Pension Benefits (the Pension Order), and the second ordering payment to Vera Hopkins from the Surviving Spouse Benefits (the Surviving Spouse Order). AT & T concedes that the Pension Order is a QDRO, but argues that because the Surviving Spouse Benefits had already vested in Sherry Hopkins, the Surviving Spouse Order is not a QDRO.

Vera Hopkins filed a civil action against AT & T in the Circuit Court of Wood County, seeking, among other things, a declaratory judgment that the Surviving Spouse Order was a QDRO entitling her to the Surviving Spouse Benefits. She also sought to recover attorneys' fees and costs. AT & T removed the case to the United States District Court for the Southern District of West Virginia, where the parties filed cross-motions for summary judgment. The district court granted AT & T's motion, denied Vera Hopkins's cross-motion, and held that the Surviving Spouse Order was not a QDRO because the Surviving Spouse Benefits had already vested in Sherry Hopkins upon Mr. Hopkins's retirement. This appeal followed.

## II.

We review de novo the district court's decision to grant AT & T summary judgment. *See Higgins v. E.I. DuPont de Nemours & Co.,* 863 F.2d 1162, 1167 (4th Cir. 1988). Summary judgment is proper only if no material facts are in dispute. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986) (citing Fed.R.Civ.P. 56). Because both sides concede that no material facts are in dispute, the only inquiry is whether the district court correctly interpreted the relevant ERISA provisions.

Vera Hopkins challenges the district court's interpretation of 29 U.S.C.A. §§ 1055 and 1056. She argues that 29 U.S.C.A. § 1056(d)(3)(F) expressly provides that a participant's former spouse can be treated as a surviving spouse. In so arguing, Vera Hopkins is absolutely correct. Under ERISA a former spouse can be treated as the surviving spouse, eligible to receive surviving spouse benefits. However, as 29 U.S.C.A. § 1056(d)(3)(F) explicitly notes, replacing the current spouse with a former spouse can be accomplished only pursuant to a "qualified domestic relations order." As a result, we must first determine whether the Surviving Spouse Order that Vera Hopkins obtained from the Circuit Court of Wood County, which treats her as the surviving spouse, is a QDRO.

Benefits provided under a pension "plan may not be assigned or alienated," 29 U.S.C.A. § 1056(d)(1), except pursuant to "a qualified domestic relations order," 29 U.S.C.A. § 1056(d)(3)(A). ERISA defines a "domestic relations order" as any judgment, decree, or order which, "(I) relates to the provision of child support, alimony payments, or marital property rights to a spouse, former spouse, child, or other dependant of a participant, and (II) is made pursuant to a State domestic relations law...." 29 U.S.C.A. § 1056(d)(3)(B)(ii). A domestic relations order is "qualified" if it, among other things, gives an alternate payee the right to "receive all or a portion of the benefits pay-

able with respect to a participant under a plan...." 29 U.S.C.A. § 1056(d)(3)(B)(i)(I).

AT & T argues that even if Vera Hopkins's Surviving Spouse Order is a "domestic relations order" for ERISA purposes, it is not "qualified."[2] AT & T contends that on the day Mr. Hopkins retired, the rights to the Surviving Spouse Benefits vested in Sherry Hopkins, his current spouse. As a result, AT & T argues, the Surviving Spouse Benefits are no longer payable to a plan participant. Noting that a QDRO must relate to a benefit "payable with respect to a participant," 29 U.S.C.A. § 1056(d)(3)(B)(i)(I), AT & T argues that Vera Hopkins's Surviving Spouse Order is not a QDRO.

■ Under ERISA, Sherry Hopkins is a "beneficiary,"[3] not a "participant."[4] *See, e.g., Dickerson v. Dickerson,* 803 F.Supp. 127, 132 (E.D.Tenn.1992) (holding that a participant's spouse may be the alternate payee or a beneficiary, but not the participant). If the Surviving Spouse Benefits vested in Sherry Hopkins upon Mr. Hopkins's retirement, Vera Hopkins's Surviving Spouse Order, entered after Mr. Hopkins retired, would relate to a benefit payable to a beneficiary. To be "qualified," however, a "domestic relations order" must relate to a benefit "payable with respect to a participant." 29 U.S.C.A. § 1056(d)(3)(B)(i)(I). Consequently, determining whether Vera Hopkins's Surviving Spouse Order is "qualified" turns on whether Sherry Hopkins's interest in the Surviving Spouse Benefits vested when Mr. Hopkins retired.

■ Determining whether a participant's current spouse has a vested interest in the Surviving Spouse Benefits is a question of

first impression in the federal courts. Regrettably, ERISA does not explicitly state when a current spouse's interest in the Surviving Spouse Benefits vests. However, after carefully reviewing the overall framework of ERISA, especially the provisions governing joint and survivor annuities, we conclude that the Surviving Spouse Benefits vest in the participant's current spouse on the date the participant retires.

When ERISA was initially enacted in 1974, Surviving Spouse Benefits were payable to the surviving spouse only if the surviving spouse was married to the participant on both the date of the participant's retirement and the date of the participant's death. *See* 26 C.F.R. § 1.401(a)–11(d)(3)(i), (ii), (iii) (1977). In 1984, however, the Retirement Equity Act (REA) amended ERISA's marriage requirement. Now, Surviving Spouse Benefits may be paid to a spouse who was married to the participant on the date of the participant's retirement, regardless of whether that spouse is married to the participant on the date of the participant's death.[5] *See* 29 U.S.C.A. §§ 1055(a) and 1055(f) (noting that the joint and survivor annuity, with its Surviving Spouse Benefits, is the automatic form of payment for a participant who is married on the date of retirement). We find that the change in ERISA's marriage requirement is evidence that the Surviving Spouse Benefits vest in the spouse married to the participant on the date of retirement.

■ In addition, REA makes it more difficult for a participant to replace a joint and survivor annuity—along with its Surviving Spouse Benefits—with another form of benefit. Under REA, the participant can change

---

**2.** AT & T also argues that Vera Hopkins's Surviving Spouse Order does not satisfy the statutory requirements of a "domestic relations order." However, because we find that her Surviving Spouse Order is not "qualified," we need not address this issue.

**3.** ERISA defines a "beneficiary" as "a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder." 29 U.S.C.A. § 1002(8) (West Supp.1996).

**4.** ERISA defines a "participant" as "any employee or former employee of an employer ... who is

or may become eligible to receive a benefit ... from an employee benefit plan ... or whose beneficiaries may be eligible to receive any such benefit." 29 U.S.C.A. § 1002(7) (West Supp. 1996).

**5.** For a spouse to receive Surviving Spouse Benefits, REA also requires that the spouse either be married to the participant for at least the one-year period prior to the participant's retirement, *see* 29 U.S.C.A. § 1055(f)(1), or be married to the participant prior to the participant's retirement and for at least a one-year period prior to the participant's death, *see* 29 U.S.C.A. § 1055(f)(2).

a joint and survivor annuity only during the ninety-day period prior to retirement, and only with the written consent of the participant's current spouse. *See* 29 U.S.C.A. § 1055(c)(2)(A), (7)(A). Unless the form of benefit is properly changed prior to retirement, the participant is locked into the joint and survivor annuity upon retirement. After retirement, the participant cannot change the form of benefit, even with the current spouse's consent. *See, e.g., Anderson v. Marshall,* 856 F.Supp. 604, 607 (D.Kan.1994) (holding that upon retirement, the Surviving Spouse Benefit "became irrevocable and could not be changed [even by a] waiver of the designated beneficiary"); *cf. Fox Valley & Vicinity Constr. Workers Pension Fund v. Brown,* 897 F.2d 275 (7th Cir.) (en banc), *cert. denied,* 498 U.S. 820, 111 S.Ct. 67, 112 L.Ed.2d 41 (1990) (allowing the waiver of the Surviving Spouse Benefit as required in a divorce decree entered prior to the participant's retirement).

The fact that a participant can replace a joint and survivor annuity—along with its Surviving Spouse Benefits—only during the ninety-day period prior to retirement, and only with the consent of the current spouse, is further evidence that the participant's spouse at the time of retirement has a vested interest in the Surviving Spouse Benefits. Even more telling is the fact that, after retirement, a participant cannot change the distribution of plan benefits, even with the current spouse's approval.

Finding that the Surviving Spouse Benefits vest in the participant's current spouse on the day the participant retires not only is consistent with the overall framework of ERISA, but also balances the competing interests of the former and current spouses.[6] A former spouse's interest in the Surviving Spouse Benefits can be protected simply by

obtaining a QDRO before the participant retires. In addition, a former spouse can obtain an interest in the participant's Pension Benefits by obtaining a QDRO at any time, as Vera Hopkins did here.[7]

■ Consequently, we find that the Surviving Spouse Benefits vested in Sherry Hopkins at the time of Mr. Hopkins's retirement. Because Sherry Hopkins is a "beneficiary" and not a "participant," Vera Hopkins's Surviving Spouse Order does not relate to a benefit "payable with respect to a participant." As a result, her Surviving Spouse Order is not a QDRO.

### III.

As a part of her appeal, Vera Hopkins also asked, pursuant to 29 U.S.C.A. § 1132(g) (West 1985), that her attorneys' fees and costs be paid by AT & T. During oral arguments, however, counsel for Vera Hopkins conceded that she would not be entitled to attorneys' fees and costs unless she prevailed. In light of our disposition and Vera Hopkins's concession, her request for attorneys' fees and costs is denied. *See Quesinberry v. Life Ins. Co. of N. Am.,* 987 F.2d 1017, 1028–29 (4th Cir.1993) (providing general guidelines for determining whether attorneys' fees should be granted under ERISA).

### IV.

For the reasons stated, the judgment of the district court is affirmed.

*AFFIRMED.*

---

**6.** There remains the possibility of a subsequent spouse. However, because Surviving Spouse Benefits may not be paid to a spouse who marries a participant after the participant's retirement, *see* 29 U.S.C.A. § 1055(f), there is no need to consider the interests of a subsequent spouse in determining whether the current spouse has a vested interest in the Surviving Spouse Benefits.

**7.** Although ERISA and the terms of the plan, and not matters of administrative convenience, determine a person's pension rights, it is worth noting

that our holding does not burden the efficient management of the plan. Because the disbursement of plan benefits is based on actuarial computations, the plan administrator must know the life expectancy of the person receiving the Surviving Spouse Benefits to determine the participant's monthly Pension Benefits. As a result, the plan administrator needs to know, on the day the participant retires, to whom the Surviving Spouse Benefit is payable.