Elaine SINGLETON, Plaintiff,

v.

Gerald D. SINGLETON, Sr. and National Automatic Sprinkler Industry Pension Fund, and U.A. Local Union Officers and Employees Pension Fund, Defendants.

Civil Action No. 3:03–CV–174–H.

United States District Court,
W.D. Kentucky,
Louisville Division.

Nov. 12, 2003.

J. Russell Lloyd, Smith & Helman, Oliver Barrett Rutherford, Mobley & Lloyd, Louisville, KY, for Plaintiff.

Oliver H. Barber, Jr., Barber, Banaszynski & Associates, Louisville, KY, Maydad

D. Cohen, O'Donoghue & O'Donoghue, Washington, DC, Thomas J. Grady, Segal Stewart Cutler Lindsay Janes & Berry PLLC, Louisville, KY, John J. McInerney, Leahy, Eisenberg & Fraenkel, Chicago, IL, John M. McIntire, O'Donoghue & O'Donoghue, Washington, DC, for Defendants.

## MEMORANDUM OPINION

HEYBURN, Chief Judge.

Plaintiff, Elaine Singleton, is the former spouse of Defendant, Gerald Singleton ("Defendant"). Plaintiff's requests a declaratory judgment that she is entitled to one-half of the pensions and designation as the surviving spouse for the surviving spouse benefits under Defendant's two pension funds, the National Automatic Sprinkler Industry Pension Fund (the "NASI"), and U.A. Local Union Officers and Employees Pension Fund (the "UAL-UOE"), (collectively "Funds"). The Funds have moved to dismiss on the grounds that Plaintiff's failure to comply with the essential notice requirements of the Employment Retirement Income Security Act of 1974 ("ERISA") bars the Funds from changing the surviving spouse's beneficiary designation. For the reasons set forth in this Memorandum, the Court concludes that the Funds' motions to dismiss must be sustained.

## I.

A fair explanation of facts is necessary even though the parties agree on all those which are material. It is their meaning which the parties dispute.

Gerald Singleton and Elaine Singleton were married May 25, 1968. They divorced by a "Decree of Dissolution of Marriage" entered by Jefferson Family Court on June 21, 2000. Prior to their official divorce Plaintiff and Defendant entered into a "Property Settlement Agreement" dated April 22, 2000, which was incorporated by reference into the Decree. Pursuant to the Property Settlement Agreement, Plaintiff and Defendant were each entitled to one-half of Defendant's NASI and UALUOE Pension Funds. As a participant[1] in those funds, Defendant earned years of credited service which entitled him to a monthly benefit, as defined by those plans. On November 11, 2000, the Jefferson Family Court entered an Agreed Order, which incorporated the Property Settlement Agreement and thereby designated Plaintiff as the surviving spouse to the extent of her interest in the Funds (the "Family Court Orders").

In March, 2000 prior to his divorce, Defendant had provided NASI with a "Proposed Property Settlement Agreement," which was identical to the Property Settlement Agreement later entered on April 22, 2000. However, this Proposed Agreement was not signed by any of the parties or their attorneys. NASI responded to Defendant that the document was a "Model QDRO [Qualified Domestic Relations Order]" for the NASI pension fund.[2]

---

1. Section 3(7) of ERISA, 29 U.S.C.A. § 1002(7), defines participant in a pension fund as "any employee or former employee of an employer, or any member or former member of an employee organization, who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer or members of such organization, or whose beneficiaries may be eligible to receive any such benefit."

2. A Domestic Relations Order ("DRO") and a Qualified Domestic Relations Order ("QDRO") are closely related. A DRO has a generally understood meaning. A QDRO is more a term of art within ERISA. For purposes of that statute each of these specific terms are defined in ERISA. *See* 29 U.S.C. § 1056(d)(3)(B)(ii) and § 1056(d)(3)(B)(i)(I).

About a year later, in February, 2001, Plaintiff provided both NASI and UAL-UOE with a proposed court order entitled "Qualified Domestic Relations Order." This document referenced the Jefferson Family Court action and the various Family Court Orders between Plaintiff and Defendant. However, it was not dated or signed by the parties, attorneys, or a Family Court judge. Both NASI and UAL-UOE notified Plaintiff that the form of that document would meet the requirements of a qualified domestic relations order, under ERISA, *if* signed by the court.[3] For the time being, Plaintiff did not respond.

About seven months later, in October, 2001, Defendant requested a pension application from NASI. A month afterwards, in November, Defendant contacted UAL-UOE for a similar application. On each application, Defendant designated Patricia Singleton as the surviving spouse. Defendant and Patricia had married on October 26, 2000. Patricia therefore qualified as a spouse under the Funds.[4] Under ERISA, neither Fund had no obligation to notify Plaintiff of the applications. Neither had heard from Plaintiff since February, 2001. Nevertheless, they were aware of her claims to Defendant's pension rights. Apparently in an abundance of caution, the Funds notified Plaintiff of Defendant's pension applications. They advised Plaintiff that she must provide the Funds with a QDRO within 30 days in order to protect her pension rights.[5] Plaintiff did not send a copy of a DRO or QDRO, nor did she respond in any other manner to the Fund's request. Defendant retired on November 30, 2001.[6] In December, 2001, he began receiving NASI benefits. In January, 2002, he began receiving UALUOE benefits.

On March 2, 2002, the Funds received "Notice of a Motion" by which Plaintiff

3. Additionally, NASI told Plaintiff that the Fund would provide a binding determination, of whether a DRO qualified under the plan as a QDRO, *only* upon receipt of a signed order.

4. A spouse is "qualified" under the UALUOE if the "Participant is legally married under the law of the State in which the Participant resides" and is "married throughout the one-year period ending with the earlier of the Participant's Annuity Starting date or date of death" or the "Participant is legally married on his Annuity Starting Date" and the Participant and spouse have "been married for at least a one-year period ending on or before the Participant's date of death."

A spouse is qualified under NASI if the "Participant and Spouse were married throughout the year ending with the date the Participant's pension payments start" or "if the Participant and spouse became married within the year immediately before the date the Participant's pension payments start and they were married for at least one year before his death."

Both Funds say that a former spouse is a "qualified" spouse under the plans if he or she was married to participant for at least one year and is required to be treated as a surviving spouse under a Qualified Domestic Relations Order.

5. Had a DRO been received by the Funds within this time, they would have proceeded with a review of the order, if Defendant's application for benefits was received after the receipt of the order. Even if the Defendant's application was in conflict with the claims, the benefits could have been put on hold until the legal issues between Plaintiff and Defendant were resolved.

6. The date of Gerald Singleton's retirement is not known precisely. Each of Mr. Singleton's applications state that the pension and/or annuity effective date was December 1, 2001, so the Court concludes from this that the date of retirement was the prior day. However, the Court notes the inconsistency on the two applications. Exhibit H of NASI's Motion to Dismiss states that the date last worked by Defendant was October 30, 2001. UALUOE's Exhibit E in its Motion to Dismiss states the last date Defendant worked was November 30, 2000. This uncertainty does not affect the result.

moved the Jefferson Family Court to enter an attached QDRO as an order of the court. In April, 2002, the Funds received another order entitled "Amended Notice–Motion" with another proposed QDRO attached. They never received a copy of any DRO signed by a judge during this time. The Funds each notified Plaintiff that, even if signed, those orders could not now be considered a QDRO because Patricia Singleton's surviving spouse benefits were already vested under ERISA. In May, 2002, NASI received a signed court order entitled "Qualified Domestic Relations Order." NASI notified Plaintiff that this latest order could not be considered a QDRO under ERISA because it purported to give already vested surviving spouse benefits to Plaintiff.

Thereafter, Plaintiff appealed those decisions to the Funds' trustees. However, the trustees of both Funds confirmed that neither order could be considered QDROs under ERISA. Plaintiff then brought this claim in federal court. Attached to the complaint were copies of the actual DROs entered by the Jefferson Family Court in 2000. This was the first time that both Funds had received the actual signed DRO.

## II.

■ Under ERISA, where a pension plan beneficiary has remarried, a former spouse may be treated as a surviving spouse, eligible to receive surviving spouse benefits, only in very limited circumstances. A current spouse can be replaced by the former spouse only pursuant to a QDRO. 29 U.S.C.A. § 1056(d)(3)(F).[7] *See also Hopkins v. AT & T Global Information Solutions Co.*, 105 F.3d 153, 155 (4th

Cir.1997). A DRO and QDRO are obviously closely related. ERISA defines a DRO as any "judgment, decree, or order which (I) relates to the provision of child support, alimony payments, or marital property rights to a spouse, former spouse, child, or other dependant of a participant, and (II) is made pursuant to a state domestic relation law ..." 29 U.S.C.A. § 1056(d)(3)(B)(ii); *see also id.* at 155. It literally should go without saying that any order, including a DRO and a QDRO is "a *written* direction or command delivered by a court or judge," and must be signed by the judge. *Black's Law Dictionary* (7th ed.1999)(emphasis added). A DRO may be considered a QDRO under ERISA only if it provides that an alternate payee receives all or a portion of the benefits payable to the participant under the plan. 29 U.S.C.A. § 1056(d)(3)(B)(i)(I); *see also Hopkins*, 105 F.3d at 155–6. Each particular plan has its own procedure for validating a QDRO.

■ When determining whether a DRO is a QDRO for purposes of ERISA, the plan administrator must notify the participant and each alternate payee of receipt of such an order as well as the plan's procedure for qualifying the DRO. 29 U.S.C.A. § 1056(d)(3)(B). Under the NASI and UALUOE plans, a former spouse is considered "qualified" if that spouse has married a participant for at least one year and is designated as a surviving spouse under a QDRO. Under ERISA, surviving spouse benefits vest in the participant's current spouse on the date when the participant retires, unless a QDRO has been entered in favor of the previous spouse. *See Hopkins*, 105 F.3d at 157. Defendant was

---

**7.** ERISA states that *"to the extent provided in any qualified domestic relations* order (i) the former spouse of a participant shall be treated as a surviving spouse of such participant for purposes of section 1055 of this title (and any spouse of the participant shall not be treated as a spouse of the participant for such purposes), and (ii) if married for at least 1 year, the surviving former spouse shall be treated as meeting the requirements of section 1055(f) of this title." 29 U.S.C.A. § 1056(d)(3)(F) (emphasis added).

married to Patricia at the time of his retirement, therefore, the surviving spouse benefits vested in her.

■ Prior to Defendant retiring and the surviving spouse benefits vesting in the current spouse Patricia, Plaintiff did not provide the Funds with a signed DRO, which could later have been determined to be a QDRO. Therefore, under ERISA, Plaintiff cannot displace Patricia Singleton as the surviving spouse. Both ERISA and *Hopkins* set out the narrow exception, where a former spouse can be considered a surviving spouse if a QDRO is received prior to the "triggering" event, in this case, Defendant's retirement. Prior to Defendant's retirement, neither Fund received a DRO which could qualify as a QDRO.

### A.

Plaintiff argues that the drafts and copies of the Family Court Orders were enough to qualify as QDROs. The Court disagrees. Despite all the transactions and documents passed between Defendant and the Funds concerning the Family Court Orders,[8] and between Plaintiff and the Funds concerning Plaintiff's rights in the Funds,[9] before Defendant retired and the benefits vested in Patricia, none of these documents was a *signed* domestic relations order. The Court finds no basis under ERISA or any related law upon which the Funds could act on the basis of unsigned orders.

### B.

Plaintiff also argues that, despite not receiving an actual signed DRO before Defendant retired, the Funds did have notice of the Family Court Orders. Plaintiff argues this constructive knowledge was enough to save her surviving spouse benefits. No doubt the Funds did have some knowledge or reasons to assume that an order or at least an agreement existed. However, the Court disagrees as to the alleged legal consequence of such knowledge. It is not enough under ERISA's statutory requirements that the Funds simply *know* of the existence of a DRO. ERISA and *Hopkins* specifically require that to qualify a former spouse for the surviving spouse benefits, where there is also a current spouse, the Funds must receive a QDRO prior to the triggering event. 105 F.3d at 155–6. Consequently, the Funds must have received a signed DRO. That a signed DRO actually existed is legally irrelevant so long as the Funds did not receive an actual copy in a timely fashion.

### C.

Plaintiff lastly argues that because she provided the Funds with the Family Court Orders subsequent to Defendant's retirement date, she can still qualify for the surviving spouse benefits. The Funds first received the Family Court Orders until well after Patricia's rights had already vested. For all the reasons stated, even subsequent confirmation of the existence of valid DROs will not qualify Plain-

---

8. As discussed above, *infra* Section I, the March, 2000 transaction between Defendant and NASI was simply a "Model QDRO" because it neither included the Decree of Dissolution that the Property Settlement Agreement was to be incorporated into, nor was it signed by the court.

9. As discussed above, *infra* Section I, the February 2001 Proposed QDRO pertained to the Jefferson Family Court action and the various Family Court Orders between Plaintiff and Defendant, but it was not dated or signed by the parties, attorneys, or the Family Court judge, therefore was not a QDRO under ERISA.

tiff for surviving spouse benefits in these circumstances.

This is an unfortunate case because it seems that the result is at odds with the original intentions of Gerald and Elaine Singleton at the time of their divorce. However, ERISA established procedures to protect all parties, including later spouses. The requirements for disenfranchising a current spouse are strictly applied for good and valid reasons. For whatever reason, Plaintiff failed to comply with those requirements within the generous time available to do so. Whether Plaintiff may yet have valid claims to other benefits under the Plans is not the subject of any additional claims in this case.

The Court will enter an order consistent with this Memorandum Opinion.

## ORDER

Defendants have moved to dismiss Plaintiff's claims for surviving spouse benefits under various ERISA pension plans. For the reasons stated in the accompanying opinion and the Court being otherwise sufficiently advised,

IT IS HEREBY ORDERED that Defendants' motion to dismiss is SUSTAINED and Plaintiff's complaint is DISMISSED WITH PREJUDICE.

This is a final order.