**VIRGINIA:**

In the Supreme Court of Virginia held at the Supreme Court Building in the City of Richmond, on Thursday, the 26th day of February, 2015.

Kimberley Cowser-Griffin, Executrix
 of the Estate of David Griffin,                                    Appellant,

 against      Record No. 140350
              Court of Appeals No. 1177-13-1

Sandra D.T. Griffin,                                               Appellee.

                                    Upon an appeal from a
                                    judgment rendered by the Court
                                    of Appeals of Virginia.


Upon consideration of the record, briefs, and argument of counsel, the Court is of opinion that the Court of Appeals of Virginia did not err.

For the reasons stated in the majority opinion of the Court of Appeals in Griffin v. Griffin, 62 Va. App. 736, 753 S.E.2d 574 (2014), the judgment of the Court of Appeals is affirmed.  The appellant shall pay to the appellee two hundred and fifty dollars damages.

This order shall be certified to the Court of Appeals of Virginia and to the Circuit Court of Sussex County, and shall be published in the Virginia Reports.

Justice Kelsey took no part in the consideration of this case.
_____

JUSTICE MILLETTE, with whom CHIEF JUSTICE LEMONS and SENIOR JUSTICE KOONTZ join, dissenting.

Because I conclude that ERISA-governed death benefits successfully vested in his surviving spouse at David Griffin's death, and are therefore not subject to limitation by a posthumously entered Qualified Domestic Relations Order (QDRO), I must respectfully dissent.

In 1996, in the course of their original divorce action, David and Sandra Griffin entered into a Property Settlement Agreement (PSA) in which they agreed to name their children as beneficiaries in "401(k) plans and other such plans which would be distributed upon the death of either party." This PSA was incorporated into their 1998 final divorce decree.

David Griffin died on May 26, 2012. At the time, he was actively employed at Dominion Power with an ERISA-governed Dominion Salaried Savings Plan (the Plan), which provides retirement and death benefits payable pursuant to ERISA. In this instance, upon the death of a Plan participant, the Plan documents provide for a lump sum payment to the surviving spouse unless the spouse explicitly consents to another beneficiary or unless a QDRO has been entered providing for an alternate beneficiary.

It is undisputed that Mr. Griffin's surviving spouse, Kimberly Cowser-Griffin, did not consent to the naming of other beneficiaries. It is likewise undisputed that neither the PSA or divorce decree met the statutory requirements for a QDRO. For this reason, Sandra Griffin now seeks entry of a posthumous QDRO to award the Griffin children Plan benefits.

2

I.

The majority concludes that nothing prevents posthumous QDROs. I agree that posthumous QDROs are at times permissible. Indeed, the regulations concerning timing of QDROs promulgated by the Labor Relations Board appear to permit posthumous QDROs, stating that a QDRO does not fail "solely because of the time at which it is issued," and illustrating this rule with an example involving the death of a participant. 29 C.F.R. § 2530.206(c)(1); see also 29 C.F.R. § 2530.206(c)(2) (ex. 1). If Mr. Griffin was unmarried at the time of his death with no designated beneficiaries, for example, I would agree that a posthumous QDRO would be permissible. However, those facts are not before the Court today.

Mr. Griffin did remarry, and at the time of his death his Plan reflected Mrs. Cowser-Griffin as both the named beneficiary and the default beneficiary under the Plan. The Plan, for ERISA purposes, had no record of anyone other than Mrs. Cowser-Griffin having an interest in his benefits. Thus, Mrs. Cowser-Griffin submits that at her husband's death she acquired a vested interest in the benefits under the Plan as his surviving spouse. At that point, the issue before this Court became distinguishable from an issue "solely" related to "timing" as set forth in 29 C.F.R. § 2530.206(c). The issue was no longer merely a matter of timing, but also one of vested interest.

It is undisputed that neither Sandra Griffin nor her children filed a QDRO with the Plan in the fourteen years between the 1998 final divorce decree and Mr. Griffin's death. The PSA and final divorce decree provided them with rights under state law, but not rights that were enforceable under ERISA. For the purposes of

3

Virginia law, rights vest at the entry of a divorce decree that includes a domestic relations order (DRO).  See Himes v. Himes, 12 Va. App. 966, 970, 407 S.E.2d 694, 697 (1991).  For the purposes of ERISA, however, benefits may only be alienated in the presence of a QDRO meeting the provisions set forth in 29 U.S.C. § 1056(d).[1]  See 29 U.S.C. § 1144(a) (setting forth ERISA's express preemption clause, providing that it "shall supersede any and all State laws insofar as they . . . refer to any [covered] employee benefit plan"); Hopkins v. AT&T Global Info. Solutions Co., 105 F.3d 153, 155-57 (4th Cir. 1997) (holding that a QDRO must be entered before interests have vested in a subsequent surviving spouse).

Certainly, the PSA and divorce decree in this case provided an interest that could have formed the basis of a subsequent QDRO to enforce these rights under ERISA at any time until the death of Mr. Griffin.  If, at death, the benefits did not vest in Mrs. Cowser-Griffin, Sandra Griffin could still obtain a QDRO and enforce these rights.  If, on the other hand, the benefits have vested in Mrs.

---

[1] A DRO is a QDRO if it recognizes an alternate payee's rights to "benefits payable with respect to a participant under [an ERISA] plan."  29 U.S.C. § 1056(d)(3)(B).  It must specify the name and mailing address of the alternate payee and the affected plan participant, the amount or percentage of the benefits to be paid or the means by which that amount will be determined, the number of payments or time period to which the order applies, and the plan to which the order applies.  29 U.S.C. § 1056(d)(3)(C).  It also must not violate the restrictions set forth in 29 U.S.C. § 1056(d).  An alternate payee seeking to establish a DRO as a QDRO must present the order to the Plan Administrator, who will timely inform him or her whether the DRO is qualified under ERISA.  29 U.S.C. § 1056(d)(3)(G).

Cowser-Griffin, the right to enforce the state domestic relations order was cut off at the time of vesting.[2]

Thus, the issue today is whether the funds vested in Mrs. Cowser-Griffin as beneficiary at Mr. Griffin's death.

## II.

An inquiry to determine the time of vesting must begin with the Plan documents:

> ERISA's principal function [is] to protect contractually defined benefits. The statutory scheme, we have often noted, is built around reliance on the face of written plan documents. "Every employee benefit plan shall be established and maintained pursuant to a written instrument," [29 U.S.C.] § 1102(a)(1), and an administrator must act "in accordance with the documents and instruments governing the plan" insofar as they accord with the statute, [29 U.S.C.] § 1104(a)(1)(D). The plan, in short, is at the center of ERISA.

---

[2] It is worth noting that the term "vesting" has a slightly more limited scope in its common usage for retirement account purposes than the traditional legal definition used in this discussion. The Plan documents and 29 U.S.C. § 1055 refer to "vesting" and "vested participants," respectively: this usage, common to retirement accounts, pertains to the time at which a participant obtains a nonforfeitable right to all or part of his or her account. See 29 U.S.C. § 1055(h). This vesting essentially addresses the rights of the participant vis-à-vis his or her employer: the status of a benefit as "vested" under colloquial retirement language does not have any bearing on the status of the participant's rights versus any third parties, such as spouses or children, claiming that benefit. It is thus distinguishable from the traditional legal sense, defined as "[h]aving become a completed, consummated right for present or future enjoyment; not contingent; unconditional; absolute <a vested interest in the estate>." Black's Law Dictionary 1794 (10th ed. 2014).

<u>US Airways v. McCutchen</u>, 569 U.S. \_\_\_, \_\_\_, 133 S.Ct. 1537, 1548 (2013) (some internal quotation marks and citations omitted).

Under the heading "Death Benefits," David Griffin's Plan states that:

> If you die while employed by Dominion, the entire value of your account is distributed to your beneficiary, including the value of all Company Matching contributions that automatically become vested upon your death.
>
> Federal law requires that, <u>if you are married when you die</u>, your spouse must receive the distribution unless she or he approves your choice of another (or an additional) beneficiary before your death. Your spouse must agree to your choice of that beneficiary by signing the spousal consent portion of a Beneficiary Authorization Form obtained from ACS. The form must have been completed, signed, notarized, and returned to ACS before your death.[3,4]

Based upon the amount in David Griffin's account at the time of his death, the Plan also dictated that a payment to a surviving spouse would be made in a lump sum payment.

The Plan documents, in combination with relevant statutes, afford the basis for this Court to conclude that the benefits at issue became vested in Mrs. Cowser-Griffin at the time of Mr. Griffin's death. This result is consistent with the majority of

---

[3] QDROs are mentioned in the Plan as a method of recognizing the rights of an alternate payee, but the Plan does not go into detail as the requirements are set forth by statute.

[4] Although David Griffin changed his beneficiaries from his children to his wife in violation of the PSA after he remarried, had he not done so, Mrs. Cowser-Griffin would still be the beneficiary under the Plan pursuant to the requirements of ERISA absent a QDRO or Mrs. Cowser-Griffin's notarized consent.

ERISA case law, which treats the retirement or death of a participant as a vesting event for the surviving spouse beneficiary.[5]

In Hopkins, 105 F.3d at 154-55, the United States Court of Appeals for the Fourth Circuit considered the case of a former spouse attempting to garnish her ex-husband's ERISA benefits to collect unpaid alimony by means of a QDRO. The ex-husband had retired but was still living, and at the time of his retirement had been remarried. The first wife sought a QDRO to garnish two kinds of ERISA benefits: pension benefits to the participant and surviving spouse benefits.

The Fourth Circuit was the first to examine the issue of when vesting occurs for an ERISA beneficiary of surviving spouse benefits. The court concluded that vesting of surviving spouse benefits occurs at retirement, and for this reason the surviving spouse benefits could not be subject to a QDRO. Id. at 156; accord Samaroo v. Samaroo, 193 F.3d 185, 190 (3d Cir. 1999).

The Fourth Circuit relied on the general finality of surviving spouse benefits in ERISA at the time of retirement to conclude that the benefit vests at retirement in the spouse to whom the participant is married at retirement. Hopkins, 105 F.3d at 156-57. After retirement, under 29 U.S.C. § 1055, the court stated, such benefits cannot be changed even by the participant. Id. at 157. In essence, those benefits therefore irrevocably belong to the spouse to whom the participant is married at retirement.

---

[5] Whether the vesting event is retirement or death depends on the type of benefits involved and whether the participant passed

7

Unlike the instant case, the court in Hopkins evaluated an annuity subject to 29 U.S.C. § 1055.  However, the distinction between the participant's and the beneficiary's benefits that drove the court's reasoning is also true for Mr. Griffin and his surviving spouse.  The determinative factor, that the form of the benefit becomes fixed at the vesting event, is just as true in this instance in which the Plan mandates a lump sum payment to the surviving spouse.

Additionally, the Fourth Circuit explicitly noted that the need for expedient administration or calculation of annuities, while not inconsistent with the holding, was not the basis for its decision.  Hopkins, 105 F.3d at 157, n.7 ("Although ERISA and the terms of the plan, and not matters of administrative convenience, determine a person's pension rights, it is worth noting that our holding does not burden the efficient management of the plan.")  In short, ERISA's protections of the rights of surviving spouse are equally applicable to non-annuitized benefits.

The United States Court of Appeals for the Ninth Circuit similarly held in Carmona v. Carmona, 603 F.3d 1041, 1057-58 (9th Cir. 2010), that "a state [domestic relations order] may not create an enforceable interest in surviving spouse benefits to an alternate payee after a participant's retirement, because ordinarily at retirement the surviving spouse's interest irrevocably vests."  While not identical in their reasoning, Hopkins and Carmona share similar rationales, reach the same conclusion, and represent the most cohesive guidance as to how to approach posthumous QDROs for surviving spouse benefits.  The

---

away during his or her employment.

8

notion that vesting of surviving spouse benefits occurs at the retirement or death of a participant has been adopted by other courts and is worth this Court's considered attention today.  See also Rivers v. Central & S.W. Corp., 186 F.3d 681, 683-84 (5th Cir. 1999) ("[B]enefits irrevocably vested in [the second wife] on the date of [her husband's] retirement," and plaintiff's failure to obtain a QDRO prior to her ex-husband's retirement forever barred her from acquiring any interest in the plan.); Langston v. Wilson McShane Corp., 828 N.W.2d 109, 114-16 (Minn. 2013) (reviewing case law nationally on the issue and adopting the Hopkins-Carmona approach).

An obvious distinction between the survivor benefits at issue in this case and those in the persuasive cases cited above is that those cases pertained to benefits that were designated upon retirement as surviving spouse benefits.  The instant case involves a 401(k)-type benefit that would have presumably been paid out to the Plan participant had he not died during his employ, but instead resulted in death benefits to a surviving spouse.

This has, I conclude, no substantive impact on the outcome. Had Mr. Griffin retired and lived, his (likely depleting) benefits would have continued to be subject to a QDRO, had Sandra Griffin decided to seek one.  During the course of his life, Mr. Griffin could perpetually be bound to abide by his divorce decree by means of a QDRO.  Yet his death during his employ altered those benefits into surviving spouse benefits, which under the preemptive powers of ERISA made them the irrevocable property of a beneficiary who was not a party to the final divorce decree.  Sandra Griffin has no

9

power to enforce a QDRO against Mrs. Cowser-Griffin:  she was not a party to the original divorce proceedings.

The very provision that excepts the benefit at issue from 29 U.S.C. § 1055 does so based on the fact that it is fully payable at death to the surviving spouse in a lump sum amount:  it is a surviving spouse benefit.  29 U.S.C. § 1055(b)(1)(C).  The same mandates protecting the surviving spouse that form the irrevocability of the benefits in <u>Carmona</u> and <u>Hopkins</u> at retirement apply to this benefit at the time of the participant's death.

<div align="center">III.</div>

The majority opinion of the Court of Appeals, the reasoning of which is affirmed today, begins its analysis setting forth the reasons that the benefits at issue are excepted from 29 U.S.C. § 1055.  That opinion, in fact, devotes nearly five pages of analysis to this undisputed point; the benefits in this case clearly fall under the 29 U.S.C. § 1055(b)(1)(C) exception.

The majority takes such pains to distinguish the case at bar from the statute solely to convince this Court to ignore the guidance by the High Court of our nation in <u>Boggs v. Boggs</u>, 520 U.S. 833 (1997), addressing Congressional intent to protect the rights of surviving spouses:

> [T]he Retirement Equity Act of 1984 (REA), Pub. L. 98-397, 98 Stat. 1426, enlarged ERISA's protection of surviving spouses in significant respects.  Before REA, ERISA only required that pension plans, if they provided for the payment of benefits in the form of an annuity, offer a qualified joint and survivor annuity as an option entirely within a participant's discretion.  REA modified ERISA to permit participants to designate a beneficiary for the survivor's annuity, other than the nonparticipant spouse, <u>only when the spouse agrees</u>.  Congress' concern for

<div align="center">10</div>

surviving spouses is also evident from the expansive coverage of § 1055, as amended by REA.  Section 1055's requirements, as a general matter, apply to all "individual account plans" and "defined benefit plans." The terms are defined, for § 1055 purposes, so that all pension plans fall within those two categories.  While some individual account plans escape § 1055's surviving spouse annuity requirements under certain conditions, Congress still protects the interests of the surviving spouse by requiring those plans to pay the spouse the nonforfeitable accrued benefits, reduced by certain security interests, in a lump-sum payment.

Id. at 843 (emphasis added)(internal citations omitted).

The final sentence refers, of course, to the conditions of the instant case.  The majority emphasizes that this sentence is dicta because Boggs pertained to an annuity covered by 29 U.S.C. § 1055.

Whether the statement is dicta does not make the analysis any less accurate.  REA did offer a comprehensive scheme to strengthen protections for surviving spouses under 29 U.S.C. § 1055, and the few individual accounts excepted from 29 U.S.C. § 1055 are still accorded surviving spouse protections by the provisions of this section requiring that surviving spouses be the named beneficiary or consent to an alternate payee.  See 29 U.S.C. § 1055(b)(1)(C). While nothing stated in Boggs might have the precedential force to dictate this Court's decision today, we are nonetheless considering an issue of federal law upon which the Supreme Court of the United States has seen fit to expound.  This Court should not lightly dismiss that exposition:  Congress created a comprehensive statutory structure to protect the rights of surviving spouses. The systemic policy in ERISA that protects surviving spouses

11

applies equally to lump sum payments to surviving spouses excepted from 29 U.S.C. § 1055.

In light of the consensus that annuity plans vest in beneficiaries at the retirement or death of the participant, in the absence of a credible reason to treat lump sum payment plans differently for the purposes of vesting, and bearing in mind that ERISA is structured with a policy preference toward protecting the interests of the surviving spouse, I conclude that Mrs. Cowser-Griffin's benefits vested upon the death of her husband. Upon vesting, it became impossible for Sandra Griffin to obtain entry of a Qualified Domestic Relations Order.

A Copy,

Teste:

Patricia L. Harrington, Clerk