**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1386-19

MARCH MCKNIGHT, JR.,

    Plaintiff-Appellant,

v.

MERRI MCKNIGHT,

    Defendant-Respondent,

_____

Submitted March 8, 2021 – Decided November 17, 2021

Before Judges Gooden Brown and DeAlmeida.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Essex County, Docket No. FM-07-16154-94.

Hegge & Confusione, LLC, attorneys for appellant (Michael A. Confusione, of counsel and on the brief).

Rutgers Law Associates, attorneys for respondent (Kimberly Will, on the brief).

The opinion of the court was delivered by

DeALMEIDA, J.A.D.

Plaintiff March McKnight, Jr. appeals from the August 2, 2019 order of the Family Part establishing the terms of a Qualified Domestic Relations Order (QDRO) distributing a share of his pension benefits to defendant Merri McKnight in this dissolution matter and the court's November 21, 2019 order denying his motion for reconsideration. We affirm.

I.

The parties were married in 1979. A judgment of divorce was entered on June 19, 1996. The judgment of divorce provided that March's[1] employee pension benefits were to be divided between the parties pursuant to a QDRO. Although the parties attempted to negotiate the terms of a QDRO, they failed to reach an agreement. As a result, they did not submit a QDRO to the court.

In 2009, March retired. He applied for a pension. Because no QDRO was in place, he was treated as the sole beneficiary of his pension account. March received one hundred percent of his pension benefits for the following ten years. On November 30, 2018, March remarried.

In February 2019, Merri filed a motion to enforce litigant's rights seeking an order: (1) compelling March to sign a QDRO awarding her a share of his pension benefits in accordance with the judgment of divorce; and (2) awarding

---

[1] Because the parties share a surname, we refer to them by their first names.

A-1386-19

her the share of pension benefits she should have received retroactive to the date March retired. Merri argued that March had refused to execute a QDRO after entry of the judgment of divorce, knowingly retired without a QDRO, and hid his retirement from her to avoid sharing his pension benefits.

March opposed the motion. He argued that his attorney attempted to secure Merri's agreement to a QDRO after entry of the judgment of divorce, but she did not respond to his inquiries. In addition, March argued that the QDRO proposed by Merri had an incorrect coverture period.

Ultimately, the parties agreed to a QDRO that reflected the terms of the judgment of divorce. The QDRO provides Merri a share of March's pension benefits during his lifetime. Merri is not entitled to survivor benefits. Although March agreed to the terms of the QDRO, he opposed the award to Merri of any share of the pension benefits he received prior to its entry.

On August 2, 2019, the trial court entered an order granting Merri's motion. The court directed the parties to sign the QDRO awarding Merri fifty percent of the marital fraction of pension benefits received by March during his lifetime "before the application of any federal, state or local taxes or other deductions" and which "shall not be reduced by the subsequent marriage of" March. In addition, the August 2, 2019 order provides that Merri is entitled to

A-1386-19

arrearages for her share, calculated pursuant to the terms of the QDRO, of the pension benefits received by March from the date of his retirement to the effective date of the QDRO. The court ordered March to inform Merri of the start date of his pension benefits and directed the parties to calculate arrearages. A fully executed QDRO was later entered by the court.

On August 29, 2019, March moved for reconsideration of the August 2, 2019 order. He argued that on May 1, 2016 he turned sixty-two and qualified for social security benefits. Pursuant to a union contract, March's retirement benefits were reduced by his monthly social security benefits. He argued that the offset made it "financially burdensome and inequitable" for him to pay Merri the arrearages in a lump sum. He requested that the court order the arrears to be paid in monthly installments over more than twenty years.

In response to Merri's opposition to the motion for reconsideration, March submitted a report from an accounting firm he engaged to calculate arrearages. Although March agreed in the QDRO that Merri's share of pension benefits would be determined on a gross basis, the report calculated the arrearages on a net basis (after taxes and other deductions). He requested that the court adopt the approach taken in the report when setting arrearages.

4

On November 21, 2019, the trial court entered an order denying March's motion for reconsideration. The court concluded that March was aware of the social security offset of his pension benefits at the time the court decided Merri's motion to enforce litigant's rights. Thus, the court concluded, the offset was not new information warranting reconsideration. In addition, the court found that March's request that Merri's arrearages be calculated on a net basis was contrary to the express terms of the QDRO to which he agreed. The court found his execution of the QDRO constituted a waiver of this argument. The court did not set an installment payment schedule.

This appeal follows. March argues the QDRO: (1) is invalid under 29 U.S.C.A. § 1056(d)(3), a provision of the Employee Retirement Income Security Act of 1974 (ERISA), because it was entered after the interests of March and his current spouse in his pension benefits vested; (2) is invalid under 29 U.S.C.A. § 1056(d)(3)(H)(iv) because it awards Merri retroactive pension benefits; (3) is inequitable and barred by laches to the extent it awards Merri retroactive pension benefits after her prolonged inaction in executing a QDRO; and (4) improperly determines Merri's pension benefits arrearages on a gross basis. March also argues that the trial court erred when it denied his motion for reconsideration.

A-1386-19

II.

Our review of a Family Part's order is limited. Cesare v. Cesare, 154 N.J. 394, 411 (1998). "[W]e do not overturn those determinations unless the court abused its discretion, failed to consider controlling legal principles or made findings inconsistent with or unsupported by competent evidence." Storey v. Storey, 373 N.J. Super. 464, 479 (App. Div. 2004). We must accord substantial deference to the findings of the Family Part due to that court's "special jurisdiction and expertise in family matters . . . ." Cesare, 154 N.J. at 413.

We must defer to the judge's factual determinations, so long as they are supported by substantial credible evidence in the record. Rova Farms Resort, Inc. v. Inv'rs Ins. Co. of Am., 65 N.J. 474, 483-84 (1974). This court's "[a]ppellate review does not consist of weighing evidence anew and making independent factual findings; rather, [this court's] function is to determine whether there is adequate evidence to support the judgment rendered at trial." Cannuscio v. Claridge Hotel & Casino, 319 N.J. Super. 342, 347 (App. Div. 1999) (citing State v. Johnson, 42 N.J. 146, 161 (1964)). We review de novo the court's legal conclusions. Manalapan Realty, L.P. v. Twp. Comm. of Twp. of Manalapan, 140 N.J. 366, 378 (1995).

A-1386-19

March's arguments regarding the validity of the QDRO under ERISA were not raised before the trial court.[2]

> It is a well-settled principle that our appellate courts will decline to consider questions or issues not properly presented to the trial court when an opportunity for such a presentation is available "unless the questions so raised on appeal go to the jurisdiction of the trial court or concern matters of great public interest."
>
> [Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973) (quoting Reynolds Offset Co., Inc. v. Summer, 58 N.J. Super. 542, 548 (App. Div. 1959)).]

Whether the QDRO complies with ERISA does not concern the trial court's jurisdiction and is not a matter of great public interest. We could, therefore, decline to address March's federal statutory arguments.

However, for the sake of completeness and to eliminate any doubt about the validity of the QDRO we briefly address March's arguments. ERISA established the regulation of pensions "as exclusively a federal concern." Alessi v. Raybestos-Manhattan, Inc., 451 U.S. 504, 523 (1981). This is accomplished through 29 U.S.C.A. § 1144(a), which provides a broad preemption of state laws

---

[2] We note that March failed to comply with Rule 2:6-2(a)(1), which requires him to include in his brief's table of contents a statement that an issue included in a point heading was not raised in the trial court.

A-1386-19

concerning pensions, even those consistent with the purposes of ERISA. Hawxhurst v. Hawxhurst, 318 N.J. Super. 72, 83-84 (App. Div. 1998).

ERISA requires each pension plan to provide that benefits under the plan cannot be assigned or alienated by the plan participant. 29 U.S.C.A. § 1056(d)(1). One exception to this provision, however, is that a participant may agree to allow an alternative beneficiary to receive all or a portion of his or her benefits pursuant to a QDRO entered under state law. 29 U.S.C.A. § 1056(d)(3)(A) and (B). ERISA contains a detailed list of requirements for an order to qualify as a QDRO. See 29 U.S.C.A. § 1056(d)(3)(C)(i) through (iv).

March does not dispute that the QDRO entered here satisfies the requirements of 29 U.S.C.A. § 1056(d)(3)(C)(i) through (iv). He argues, however, that the timing of its entry after his retirement and remarriage invalidates the award of pension benefits to Merri, either entirely, or to the extent that those benefits are retroactive to the date of March's retirement. A statute enacted by Congress in 2006 amending ERISA precludes this argument.

As explained by the Second Circuit, "[i]n the Pension Protection Act of 2006, Congress made clear that a QDRO will not fail solely because of the time at which it is issued, see Pub. L. No. 109-280, § 1001, 120 Stat. 780 (2006)." Yale-New Haven Hosp. v. Nicholls, 788 F.3d 79, 85 (2d Cir. 2015). In that

8

statute, Congress mandated that the Secretary of Labor issue regulations under

ERISA clarifying that:

> a domestic relations order otherwise meeting the requirements to be a qualified domestic relations order . . . shall not fail to be treated as a qualified domestic relations order solely because –
>
> . . . .
>
> (B)   of the time at which it is issued . . . .
>
> [Pub. L. No. 109-280, § 1001(1).]

See also 29 C.F.R. § 2530.206(c)(1) (stating that "a domestic relations order shall not fail to be treated as a qualified domestic relations order solely because of the time at which it is issued.").

Examples adopted with the regulation provide that a QDRO cannot be rejected where the parties divorce and a QDRO awarding pension benefits is not received by the plan administrator until: (1) after the plan beneficiary's death; (2) after the ex-spouse of the plan beneficiary no longer meets the qualifications of a spouse under the plan; and (3) after the plan beneficiary is already retired under an annuity plan that does not provide benefits for the ex-spouse. See 29 C.F.R. § 2530.206(c)(2), Examples (1) through (3).

The statute and regulation were applied in Yale-New Haven Hosp. in circumstances substantively equivalent to those presented here.  In that case,

A-1386-19

Harold Nicholls and Claire Nicholls were divorced in 2008. 788 F.3d at 82. The judgment of divorce provided that Harold was to transfer fifty percent of the funds he deposited in several retirement accounts to Claire. Ibid. He failed to do so. Id. at 83. The following year, Harold remarried. He died in 2012, having named his second wife, Barbara, as the beneficiary of each of his retirement accounts. Ibid.

After Harold's death, the state court that entered the judgment of divorce entered several QDROs nunc pro tunc directing the administrators of Harold's retirement plans distribute to Claire her portion of the funds in his retirement accounts consistent with the judgment of divorce. Id. at 84. Barbara disputed the validity of the QDROs, arguing that her interest, as survivor, in the funds in Harold's retirement plans vested upon her marriage to him and at his death and could not be alienated by subsequently entered QDROs. Id. at 85.

The Second Circuit, relying on the 2006 statute and its related regulation, found that the QDROs cannot be invalidated based solely on the timing of their entry. Id. at 85-86. Noting that the nunc pro tunc QDROs were intended to be effective as of the date of the judgment of divorce, the court explained:

> The orders were based on a settlement agreement entered before Mr. Nicholls's death that specifically contemplated the drafting and issuance of a QDRO at a later time and that provided for the court's continuing

A-1386-19

jurisdiction over that later proceeding. Cf. In re Gendreau, 122 F.3d 815, 818 (9th Cir. 1997) ("The QDRO provisions of ERISA do not suggest that [the former spouse] has no interest in the plans until she obtains a QDRO, they merely prevent her from enforcing her interest until the QDRO is obtained.") (emphasis omitted) . . . . The nunc pro tunc orders, as valid QDROs, therefore effectively assign benefits to Claire Nicholls before Mr. Nicholls's death and before any interest in the plans could vest with Barbara Nicholls.

[Id. at 86 (footnote omitted).]

We agree with the analysis of the court in Yale-New Haven Hosp. Merri's interest in March's pension benefits was granted by the June 16, 1996 judgment of divorce, which contemplated the subsequent entry of a QDRO memorializing the court's decision. The parties failed to execute a QDRO reflecting the court's award of pension benefits to Merri until 2019. March's retirement and second marriage in the period between entry of the judgment of divorce and entry of the QDRO did not divest Merri of her interest in a portion of March's pension benefits awarded to her in the judgment. The 2006 amendment to ERISA clearly provides that the delay in entry of the QDRO does not render its provisions invalid. See also Files v. ExxonMobil Pension Plan, 428 F.3d 478, 488-89 (3d Cir. 2005) ("[T]he detailed QDRO requirements set forth in ERISA are devoid

of any requirement that a QDRO be in place before plan benefits reach pay status under the plan.").

The fact that the trial court did not designate the QDRO as nunc pro tunc does not change our conclusion. The QDRO directs that benefits be paid to Merri commencing "with the next benefit payment following the qualification" of the order as a QDRO. In the August 2, 2019 order, the court directed March to pay Merri her share of the pension benefits he received prior to entry of the QDRO. The two orders, when viewed together, establish that the court implemented the terms of the 1996 judgment of divorce as if the QDRO had been entered prior to March's retirement.

The precedents on which March relies are inapposite. For example, in Rivers v. Central and South West Corp., 186 F.3d 681, 682 (5th Cir. 1999), which predates the 2006 statute, Rivers sought entry of a QDRO after the death of her former husband awarding her survivor benefits for a retirement account not addressed in their judgment of divorce. At the time of Rivers' motion, the survivor benefits were being paid to her former husband's second wife. Ibid. Rivers argued that the parties' failure to distribute retirement benefits in the judgment of divorce must be "remedied" by a QDRO awarding her the survivor benefits. Id. at 682-83.

12

The court held that Rivers had failed to protect her interest in the retirement account by not obtaining a QDRO prior to her former spouse's retirement. Id. at 683-84. In addition, the court held that the former spouse's survivor "pension benefits irrevocably vested in [the second wife] on the date of his retirement and Rivers is forever barred from acquiring an interest in [his] pension plan." Id. at 683-84.

Here, Merri's interest in March's pension benefits was awarded in the judgment of divorce prior to his retirement and second marriage. She did not seek to obtain a distribution of benefits not awarded to her at the time of the divorce through entry of a QDRO. Merri merely failed to ensure that a QDRO memorializing the terms of the judgment of divorce was entered in a timely fashion. The 2006 amendment to ERISA made clear that the timing of the entry of the QDRO alone cannot be the basis for its invalidation. See, e.g., Miletello v. R.M.R. Mech., Inc., 921 F.3d 493, 497 (5th Cir. 2019) ("Since Rivers was decided, Congress has modified ERISA to make 'clear that a QDRO will not fail solely because of the time at which it [was] issued.'"). We note as well that Rivers sought distribution of survivor benefits, the right to which had vested in her ex-spouse's second wife at the time of his retirement. The QDRO at issue

13

here does not distribute survivor benefits to Merri. The order awards her only a portion of the pension benefits March receives during his lifetime.

In Hopkins v. AT&T Global Info. Solutions Co., 105 F.3d 153, 154-55 (4th Cir. 1997), which also predates the 2006 statute, Hopkins sought entry of a QDRO awarding her a portion of the pension benefits then being received by her former spouse. The judgment of divorce had not awarded her any interest in the former spouse's retirement account, in part because she was awarded alimony. Id. at 154. However, because the spouse was substantially in arrears on his alimony obligation, Hopkins sought the QDRO as, in effect, compensation for the arrears. The court that had entered the judgment of divorce issued the QDRO awarding Hopkins a portion of the former spouse's pension benefits, as well as a second QDRO naming her the surviving beneficiary of his account, despite the fact that the ex-spouse had remarried. Id. at 155.

The Fourth Circuit held that the QDRO naming Hopkins the surviving beneficiary was invalid because it was entered post-retirement. Id. at 156-57. The court concluded that under ERISA, before a plan participant retires, the surviving spouse benefits are vested in him and payable to him. They are, therefore, subject to a QDRO in favor of an ex-spouse prior to retirement. However, when the participant retires, the surviving spouse benefits become

A-1386-19

vested in whomever he is married to on the day of retirement and are subsequently payable to that person. Ibid. Because those benefits are not payable to the plan participant after retirement, they are not subject to a QDRO for distribution to the plan participant's former spouse. Ibid. The court reasoned that because Hopkins had not been awarded survivor benefits in the judgment of divorce and applied for the QDRO only after her former spouse had retired, she could not be named as the surviving beneficiary of his pension account.[3]

Again, the QDRO at issue here does not award Merri survivor benefits. The order provides that she is entitled to a share of March's pension benefits during his lifetime only. Thus, to the extent that March's second wife has an interest in his pension plan as a surviving spouse, that interest is not affected by the QDRO executed pursuant to the August 2, 2019 order. The holding in Hopkins with respect to the vesting of the interest of a pension plan participant's surviving spouse, therefore, is not germane to the issues raised in this appeal.

We disagree with March's argument that ERISA precludes the trial court from directing him to pay to Merri her share of the pension benefits he received before entry of the QDRO. Contrary to March's suggestion, the QDRO does not

---

[3] The validity of the QDRO awarding Hopkins a portion of the pension benefits received by her former spouse during his lifetime was not before the court.

order the retroactive payment of pension benefits to Merri by the plan administrator. The QDRO is silent as to arrears and takes effect with the first benefits payment after it is found to be a qualified order. It is the August 2, 2019 order that directs March to pay Merri the share of the pension benefits she should have received from the date of his retirement to the date that the QDRO takes effect. ERISA is not applicable to the August 2, 2019 order, which is not a QDRO. The August 2, 2019 order was issued under the trial court's equitable authority to return to Merri her portion of pension benefits March received while aware that a QDRO had not been executed. It is well established that plan assets are alienable post-distribution. See Metlife Life & Annunity Co. of Ct. v. Akpele, 886 F.3d 998, 1007-08 (11th Cir. 2018). We see no abuse of the trial court's discretion to make Merri whole in these circumstances.

Nor are we persuaded by March's argument that the trial court erred when it denied his motion for reconsideration. Rule 4:49-2 provides:

> Except as otherwise provided by R. 1:13-1 (clerical errors) a motion for rehearing or reconsideration seeking to alter or amend a judgment or order shall . . . state with specificity the basis on which it is made, including a statement of the matters or controlling decisions which counsel believes the court has overlooked or as to which it has erred, and shall have annexed thereto a copy of the judgment or order sought to be reconsidered and a copy of the court's corresponding written opinion, if any.

"A motion for reconsideration . . . is a matter left to the trial court's sound discretion." Lee v. Brown, 232 N.J. 114, 126 (2018) (quoting Guido v. Duane Morris, LLP, 202 N.J. 79, 87 (2010)); see also Cummings v. Bahr, 295 N.J. Super. 374, 389 (App. Div. 1996). A party may move for reconsideration of a court's decision pursuant to Rule 4:49-2, where (1) the court based its decision on "a palpably incorrect or irrational basis," (2) the court either failed to consider or "appreciate the significance of probative, competent evidence," or (3) the moving party presents "new or additional information . . . which it could not have provided on the first application." Cummings, 295 N.J. Super. at 384 (quoting D'Atria v. D'Atria, 242 N.J. Super. 392, 401-02 (Ch. Div. 1990)).

The moving party must "initially demonstrate that the [c]ourt acted in an arbitrary, capricious, or unreasonable manner, before the [c]ourt should engage in the actual reconsideration process." D'Atria, 242 N.J. Super. at 401. A motion for reconsideration is not an opportunity to "expand the record and reargue a motion. [It] is designed to seek review of an order based on the evidence before the court on the initial motion, . . . not to serve as a vehicle to introduce new evidence in order to cure an inadequacy in the motion record." Capital Fin. Co. of Del. Valley, Inc. v. Asterbadi, 398 N.J. Super. 299, 310 (App. Div. 2008).

The trial court had ample grounds to deny March's motion for reconsideration, which was based on information available to him, but not submitted to the trial court, when Merri's motion to enforce litigant's rights was decided, and which raised a request for relief – the calculation of arrears on a net basis – that was directly contrary to the QDRO to which March consented.

To the extent we have not specifically addressed any of March's remaining claims, including his argument that Merri's arguments should be barred by laches, we conclude they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION