**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**
No. 98-31112

RHEBA HAWTHORNE FRANKLIN RIVERS

Plaintiff-Appellant,

v.

CENTRAL AND SOUTH WEST CORPORATION, ET AL

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Western District of Louisiana

_____

September 7, 1999

Before REYNALDO G. GARZA, HIGGINBOTHAM, and DAVIS, Circuit
Judges.

REYNALDO G. GARZA, Circuit Judge:

Rheba Hawthorne Franklin Rivers ("Rivers") seeks a judgment
awarding her a portion of the pension benefits currently being
paid to the second wife, and widow, of pension plan participant
Perry Franklin ("Franklin"). Rivers, Franklin's ex-wife, asserts
that she is both a "participant" and "beneficiary" as
contemplated under ERISA and that the district court erred by
determining that Franklin's pension benefits had irrevocably
vested in his second wife. Finding no error in the district
court's rationale, we affirm.

I.

Rivers and Franklin were married on February 2, 1946, and

divorced on February 16, 1972.  Franklin had been employed by Southwestern Electric Power Company ("SWEPCO") since September 16, 1952, where he remained an employee until his retirement on April, 1, 1983.  A community property settlement agreement was entered into between Rivers and Franklin on the day of their divorce.  The agreement did not address Franklin's pension benefits in SWEPCO.  Franklin married his second wife, Carolyn Franklin ("Mrs. Franklin") on February 19, 1972, and they remained married until Franklin's death on July 26, 1987.  On April, 1, 1983, the day of his retirement, Franklin began to receive joint and survivor annuity benefits from SWEPCO.  Under the terms of the pension agreement, Mrs. Franklin was entitled to receive a survivor annuity equal to fifty percent of her husband's pension when he died.

On July 29, 1997, Rivers filed suit in state court against Central and Southwest Corporation[1] and SWEPCO asserting a claim to one-half of twenty-four and one-half years worth of Franklin's pension from SWEPCO.  The suit was removed to the United States District Court for the Western District of Louisiana and Rivers was subsequently ordered to join Mrs. Franklin as a defendant in the suit.  In her petition to the lower court, Rivers argued that she is entitled to Franklin's pension money as one-half owner of the pension plan under Louisiana's community property laws.  She

---

[1]Central and Southwest Corporation ("C&S") is SWEPCO's parent corporation.

requested that a "qualified domestic relations order" ("QDRO") be issued recognizing her as the rightful beneficiary of that plan, thereby remedying the parties' failure to include Franklin's retirement benefits in the divorce settlement agreement.

On June 8, 1998, Mrs. Franklin filed a motion for summary judgment which was adopted in-full by C&S and SWEPCO. The lower court granted the motions for summary judgment and dismissed with prejudice all claims that Rivers had against the defendants. This appeal followed.

## II.

This court reviews the grant of a summary judgment *de novo*, applying the same standards as the district court. *See Duffy v. Leading Edge Products, Inc.,* 44 F.3d 308, 312 (5th Cir. 1995). Summary judgment is appropriate, when, viewing the evidence in the light most favorable to the non-moving party, the record reflects that no genuine issue of any material fact exists, and the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986); *see also* FED.R.CIV.P.56(c). After the movant meets its burden, the non-movant must designate specific facts showing there is a genuine issue for trial. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

Rivers argues that ERISA does not preempt the settlement agreement she entered into at the time of her divorce. She

asserts that, although the agreement failed to include an interest in Franklin's pension money, the court can now "supplement" the agreement by ordering that she be given a one-half interest in Franklin's pension plan.

It is well settled that ERISA generally preempts state law. *Morales v. Trans World Airlines Inc.*, 504 U.S. 374, 383 (1992). This sweeping preemption made it difficult in the past for state courts to divide pension entitlements in divorce proceedings. Surviving spouse benefits were payable to the surviving spouse only if the surviving spouse was married to the participant on both the date of the participant's retirement and the date of the participant's death. *See* 26 C.F.R. § 1.401(a)-11(d)(3)(i),(ii),(iii)(1977). To remedy this situation, the Retirement Equity Act ("REA") of 1984 amended ERISA's marriage requirements. Presently, a former spouse can replace the current spouse as the beneficiary of the plan if they obtain a qualified domestic relations order ("QDRO"), recognizing the former spouse as an alternate payee. 29 U.S.C.A. § 1056(d)(3)(A).

In *Hopkins v. AT&T Global Information Solutions Co.*, 105 F.3d 153, 155 (4th Cir. 1997), the Fourth Circuit acknowledged that a former spouse can be recognized as a surviving spouse when all of the statutory requirements of § 1056 are met. Most importantly, however, it determined that the benefits irrevocably vest in the plan participant's current spouse on the date of the

4

participant's retirement. *Id*. at 156. In *Hopkins*, the former spouse of the plan participant obtained a Surviving Spouse Order and argued that it granted her an ownership right, under § 1056, in her ex-husband's pension plan.[2] The court determined, as a matter of first impression in the federal courts, that a plan participant's benefits vest in his current spouse on the day of retirement. *Id*. at 156. Since the petitioner had obtained the order one year after the plan participant's date of retirement, the court held that the pension's benefits had irrevocably vested in the current spouse and that the order was not a QDRO for purposes of § 1056. *Id*.

This Circuit agrees with the Fourth Circuit's decision in *Hopkins* and adopts its rationale. Rivers failed to protect her rights in Franklin's pension plan by neglecting to obtain a QDRO prior to Franklin's retirement date. Consequently, Franklin's pension benefits irrevocably vested in Mrs. Franklin on the date of his retirement and Rivers is forever barred from acquiring an interest in Franklin's pension plan.

### III.

River's failure to obtain a QDRO prior to Mrs. Franklin's vesting of Franklin's pension benefits forbids any recovery by Rivers. Accordingly, we AFFIRM the district court's decision in

---

[2]The court order was granted as a method of collecting alimony that was due to her.

5

all respects.