**IBM SAVINGS PLAN and International Business Machines Corporation as Fiduciary of the IBM Savings Plan Plaintiffs,**

v.

**ANDREW CARLTON PRICE, Emily Jane Price, and Lucille Freeman Price Defendants.**

No. 2:04–CV–187.

United States District Court,
D. Vermont.

Dec. 13, 2004.

Steven Paul Crowther, Esq., Burlington, VT, for Plaintiffs.

Elizabeth Marie Demas, Esq., Richard W. Kozlowski, Esq., Burlington, VT, for Defendants.

## OPINION AND ORDER

SESSIONS, Chief Judge.

Plaintiffs, the IBM Savings Plan (the "Plan") and International Business Machines Corporation ("IBM"), in its capacity as a fiduciary of the Plan, filed this action for interpleader under Fed.R.Civ.P. 22 to determine the proper beneficiaries of an employee benefit plan governed by the Employee Retirement Income Security Act ("ERISA"). This action concerns a dispute between the defendants as to who is rightfully entitled to the proceeds of Gregory Price's IBM Tax Deferred Savings Plan Account. Gregory Price's children, defendants Andrew Carlton Price ("Andrew") and Emily Jane Price ("Emi-

ly"), claim that they are entitled, in equal amounts, to share the full proceeds of the savings plan. Gregory Price's ex-wife, defendant Lucille Freeman Price ("Lucy"), claims that she is entitled to part of the proceeds of the savings plan pursuant to the terms of a qualified domestic relations order ("QDRO"). On October 15, 2004, Lucy filed a motion for summary judgment asking the Court to award her this portion of the savings plan and seeking attorney's fees (Doc. 13). On November 2, Andrew and Emily filed a motion for summary judgment asking the Court to award them the full proceeds of the savings plan (Doc. 16). For the reasons that follow, Lucy's motion for summary judgment is GRANTED IN PART and DENIED IN PART. Andrew and Emily's motion for summary judgment is DENIED.

### Factual Background

Because this case is now before the Court on cross-motions for summary judgment, the following facts are undisputed. Gregory Price worked for IBM from December 5, 1977 until February 19, 2002. During his employment, Mr. Price participated in two IBM-sponsored pension plans. These were a defined benefit plan and a 401(k) savings plan. The 401(k) plan is also known as a Tax Deferred Savings Plan ("TDSP Plan"). It is the TDSP Plan that is the subject of this action.

Gregory Price and Lucy were married on September 16, 1989. On January 21, 2003, they were divorced pursuant to a Final Order and Decree of Divorce ("Divorce Decree") issued by the Chittenden Family Court (Doc. 14, Ex. A). This decree included the following provision:

> The HUSBAND has a TDSP account through his previous employment with IBM. The WIFE shall receive 50% of the increased value of the TDSP account from the date of marriage (September

16, 1989) through the present. The HUSBAND shall be awarded the remaining funds in his TDSP account, free and clear of any rights of the wife. The WIFE's attorney shall prepare a QDRO to effectuate the terms of this provision.

Divorce Decree at ¶ 11. The Decree also awarded Lucy 50% of the marital share of Mr. Price's defined benefit plan from IBM. Divorce Decree at ¶ 12.

IBM has a policy of requiring parties to submit proposed QDROs to it for review prior to submission to a court. This allows IBM to assist parties to prepare orders that comply with federal law and with IBM's own guidelines and procedures. See Guide to "QDROs" Under IBM Pension Plans (Doc. 13, Ex. 2). On January 16, 2003, five days prior to the issuance of the Divorce Decree, Lucy submitted two proposed QDROs to IBM. These proposed QDROs were intended to effectuate the terms of the Divorce Decree. IBM acknowledged receipt of the proposed QDROs and began processing them.

On February 5, 2003, Gregory Price died. At that point, Lucy had not submitted her proposed QDROs to the Chittenden Family Court. In letters dated February 12 and 24, 2003, IBM informed Lucy that it would not honor the proposed QDROs because they had not been approved by a court.

On September 17, 2003, Lucy petitioned the Chittenden Family Court to issue the QDROs nunc pro tunc (meaning "now for then"). The Chittenden Family Court granted this request and on December 2, 2003, the court issued two orders nunc pro tunc to January 13, 2003. One of these orders is titled "IBM Tax Deferred Savings Plan (TDSP) Qualified Domestic Relations Order" and relates to the TDSP Plan at issue in this case (Doc. 14, Ex. F). The Court shall refer to this order as the "TDSP Order."

The next day, on December 3, 2003, Lucy filed claims under the TDSP Plan and the defined benefits plan with the IBM Plan Administrator. On April 28, 2004, IBM informed Lucy that, in light of the orders of December 2, the Plan Administrator now approved payment to Lucy under the defined benefits plan.

IBM has not approved payment under the TDSP Plan as it received a competing claim from Emily and Andrew. Faced with competing claims on the proceeds of the TDSP Plan, plaintiffs IBM and the Plan filed this action for interpleader on July 29, 2004. On September 28, 2004, this Court held that the plaintiffs were entitled to file and maintain this action for interpleader. Order at 1 (Sept. 28, 2004) (Doc. 11). The Court also ordered the plaintiffs to deposit a check representing the entire proceeds payable under the TDSP Plan with the Registry of the Court. Id. The interpleaded defendants were ordered to try their adverse claims without involving the plaintiffs. Id. After tendering the check with the TDSP Plan's proceeds, the plaintiffs were dismissed from this suit with prejudice. Id.

### Summary Judgment Standard

Summary judgment is granted only if there is no genuine issue as to any material fact and the moving party has shown that it is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); see also N.Y. Stock Exch., Inc. v. N.Y., N.Y. Hotel LLC, 293 F.3d 550, 554 (2d Cir.2002). The evidence is reviewed in the light most favorable to the nonmoving party, with all ambiguities resolved and all reasonable inferences drawn in its favor. EMI Catalogue P'ship v. Hill, Holliday, Connors, Cosmopulos Inc., 228 F.3d 56, 61 (2d Cir.2000). The moving party has the initial burden of coming forward with those parts of the record it feels demon-

strate an absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The non-moving party "may not rest upon the mere allegations or denials of the adverse party's pleading" but must "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e).

## Discussion

■ As they raise the same issues, the Court will consider the motions for summary judgment together.[1] The main issue in this case is whether the TDSP Order is a valid QDRO. Lucy concedes that she is not entitled to any of the proceeds of the TDSP Plan unless there is a valid QDRO. Lucy argues that both the Divorce Decree and the TDSP Order are valid QDROs. The Court agrees that the TDSP Order is a QDRO. Thus, the Court does not need to determine whether the Divorce Decree is also a QDRO.

### A. The TDSP Order is a Valid QDRO

Generally, ERISA preempts state laws that "relate to" employee benefit plans. 29 U.S.C. § 1144(a). An exception exists, however, for QDROs. 29 U.S.C. § 1144(b)(7) (stating that ERISA does not preempt "qualified domestic relations orders (within the meaning of section 1056(d)(3)(B)(i) of this title)"). This exception is intended "to give effect to divorce decrees and related state-court orders insofar as they pertain[ ] to ERISA-regulated plans." *Metropolitan Life Ins. Co. v. Bigelow,* 283 F.3d 436, 441 (2d Cir.2002).

The requirements for a valid QDRO are outlined in 29 U.S.C. § 1056(d)(3). First, a QDRO must be a domestic relations order ("DRO"). 29 U.S.C. § 1056(d)(3)(B). DROs include any order that "relates to the provision of ... marital property rights to a ... former spouse ... of a participant, and ... is made pursuant to a State domestic relations law." 29 U.S.C. § 1056(d)(3)(B)(ii). A QDRO must be an order "which creates or recognizes the existence of an alternate payee's right to, or assigns to an alternate payee the right to, receive all or a portion of the benefits payable with respect to a participant under a plan." 29 U.S.C. § 1056(d)(3)(B)(i)(I).

A QDRO must also satisfy a variety of other statutory requirements. A QDRO cannot (1) require the plan to provide any type of benefit not otherwise provided, (2) require the plan to provide increased benefits, or (3) require benefits to be paid to an alternate payee which must be paid to another alternate payee under another QDRO. 29 U.S.C. § 1056(d)(3)(D); *see also Bigelow,* 283 F.3d at 441. Finally, a QDRO must specify the name and mailing address of the alternate payee and the affected plan participant, the amount or percentage of the participant's benefits to be paid or the means by which that amount will be determined, the number of payments or time period to which the order applies, and the plan to which the order applies. 29 U.S.C. § 1056(d)(3)(C); *see also Bigelow,* 283 F.3d at 441.

If we apply the statutory requirements, it seems straightforward that the TDSP Order is a valid QDRO. First, it is an order concerning marital property rights and it recognizes an alternate payee's right

1. Andrew and Emily did not file an opposition to Lucy's motion for summary judgment. Rather than deeming this motion unopposed pursuant to Local Rule 7.1(6), the Court will treat the November 2, 2004, motion for summary judgment as being a motion for summary judgment and an opposition to Lucy's motion. The Court will also consider the "Discussion" section of the November 2 motion as the memorandum in support required by Local Rule 7.1(2).

to proceeds of a plan. Thus, the Order satisfies the requirements of 29 U.S.C. § 1056(d)(3)(B). The TDSP Order also provides the required addresses, plan details, number of payments (in this case a single lump sum) and provides a means for determining the amount to be payed. Thus, the TDSP Order satisfies the requirements of 29 U.S.C. § 1056(d)(3)(C).

The TDSP Order also satisfies the requirements of 29 U.S.C. § 1056(d)(3)(D). The TDSP Order awards Lucy 50% of the increase in the account balance from September 16, 1989 through January 13, 2003. Thus, it does not require the plan to provide increased benefits or a type of benefit not otherwise provided for. Similarly, the TDSP Order does not require benefits to be paid to an alternate payee which must then be paid to another alternate payee under another QDRO.

Rather than argue that the TDSP Order fails to satisfy a statutory requirement, Andrew and Emily argue that the TDSP Order is not a valid QDRO because it was issued after the death of Gregory Price. They claim that QDROs cannot be retroactively applied. In response, Lucy argues that the weight of authority supports the position that QDROs can be issued *nunc pro tunc*. Lucy is correct.

A number of courts have held that QDROs may be issued *nunc pro tunc* after the death of the plan participant. In *Trs. Of Directors Guild Of America Producer Pension Benefits Plans v. Tise*, 234 F.3d 415 (9th Cir.2000), *amended by*, 255 F.3d 661 (9th Cir.2000) the Ninth Circuit considered this issue in detail. In *Tise*, a child support order was converted to a QDRO after the death of the plan participant. This order was issued *nunc pro tunc. See Tise*, 234 F.3d at 419. The Ninth Circuit held that the QDRO was valid. *See id.* at 420–25.

The *Tise* court reached its conclusion after a careful review of the statutory scheme governing QDROs. First, the Court noted that "for all the detail of the QDRO requirements, ERISA nowhere specifies that a QDRO must be in hand before benefits become payable." *Id.* at 421. The court placed special emphasis on 29 U.S.C. §§ 1056(d)(3)(G)-(H), noting that, under these provisions, "the statute specifically provides for situations in which no valid QDRO issues until after benefits become payable." *Id.*

■ If a pension plan is placed on notice that a DRO may be a QDRO, it may take a reasonable period to determine whether the DRO is a QDRO. 29 U.S.C. § 1056(d)(3)(G)(i)(II). The statute requires a pension plan to segregate any benefits that would be payable to an alternate payee under the terms of this DRO during the first 18 months that those benefits would be payable if the DRO is ultimately deemed a QDRO. 29 U.S.C. § 1056(d)(3)(H)(i). As the Ninth Circuit notes, it is unlikely Congress expected that plan administrators would need 18 months to determine if a DRO is a QDRO. *See Tise*, 234 F.3d at 422. Rather, the 18 month period "was to provide a time in which any defect in the original DRO could be cured." *Id.*

This conclusion is strongly supported by the text of 29 U.S.C. § 1056(d)(3)(H)(ii) which requires the plan administrator to pay the segregated funds to the alternate payee if "the order (*or modification thereof*)" is determined to be a QDRO. 29 U.S.C. § 1056(d)(3)(H)(ii) (emphasis added). Thus, the statute allows an alternate payee 18 months after benefits become payable to perfect a DRO into a QDRO. *See Tise*, 234 F.3d at 422. Here, Lucy obtained the TDSP Order approximately 11 months after the Divorce Decree. Thus, the TDSP Order was filed during

the eighteen-month period permitted under ERISA to secure a QDRO. *See id.; see also Hogan v. Raytheon, Co.,* 302 F.3d 854, 857 (8th Cir.2002).

Equitable considerations also favor recognizing QDROs issued *nunc pro tunc.* If an alternate payee automatically lost any right to plan proceeds "once an event occurred that, absent an enforceable QDRO would make the proceeds payable to someone else, then a plan participant's retirement, the vicissitudes of court scheduling, or a plan participant's death, all events beyond the control of the alternate payee, could determine the parties' substantive rights." *Tise,* 234 F.3d at 423; *see also Patton v. Denver Post Corp.,* 326 F.3d 1148, 1153–54 (10th 2003). These considerations are especially pertinent here. The Divorce Decree outlines a clear agreement between Lucy and her ex-husband. Thus, if the TDSP Order is not given effect as a QDRO then Lucy will lose some of the benefits of her divorce agreement.

 The Eighth Circuit and the Tenth Circuit have both followed *Tise. See Patton,* 326 F.3d at 1151–54; *Hogan,* 302 F.3d at 857. The facts of *Hogan* are very similar to the facts here. In both cases, the plan participant died after a divorce order was entered but before a QDRO had been prepared to effectuate the terms of the divorce order. *Hogan,* 302 F.3d at 855–56. In *Hogan,* the participant's ex-spouse also obtained a posthumous QDRO. *Id.* at 856. The court held that the QDRO was valid. *Id.* at 857.

In response to Lucy's argument, Andrew and Emily cite *Ross v. Ross,* 308 N.J.Super. 132, 705 A.2d 784 (1998), *Samaroo v. Samaroo,* 193 F.3d 185 (3rd Cir. 1999) and *Rivers v. Central & S.W. Corp.,* 186 F.3d 681 (5th Cir.1999). These cases are not persuasive here.

*Ross* provides only very weak authority as it predates the federal decisions holding that QDROs may be issued *nunc pro tunc* after the plan participant's death. *See Ross,* 705 A.2d at 797 (noting that "[n]o federal case has allowed a QDRO to be entered after a participant's death"). The *Ross* court indicated that its holding led to "[t]he unfortunate result ... that equity will not prevail." *Id.* This strongly suggests that the court would have reached a different result in light of the holdings in *Tise, Hogan* and *Patton.*

In *Samaroo,* a divided panel of the Third Circuit rejected a *nunc pro tunc* QDRO. The facts in *Samaroo* are quite different from this case. In *Samaroo,* a divorce decree provided for an equal division of pension plan payments. *Samaroo,* 193 F.3d at 187. The decree did not have a provision addressing what would occur if the plan participant died prior to becoming eligible for payments. *Id.* When the plan participant died prior to becoming eligible for payments his ex-wife obtained a *nunc pro tunc* amendment to the divorce decree purportedly entitling her to the pre-retirement survivor's annuity. *Id.* at 186.

The *Samaroo* court held that, under 29 U.S.C. § 1056(d)(3)(D), the amended divorce decree was not a QDRO because it increased the liability of the plan. *See id.* at 189–91. The court noted that, after his divorce, the plan participant maintained the right to remarry and confer survivorship benefits on his new wife. *Id.* at 191. The court held that the right to dispose of the survivor's annuity lapsed when the plan participant died. *Id.* Thus, when the participant died, the plan was not required to make any payment. In contrast, under the *nunc pro tunc* amendment to the divorce decree, the plan would be required to pay the survivor's annuity. *See id.* Thus, the court concluded that the QDRO would increase the liability of the plan.

In this case, it is clear that the TDSP Order does *not* increase the liability of the plan. This case involves a savings plan rather than survivorship benefits. The full proceeds of this plan will be distributed regardless of how the Court rules. Neither party contests this. Thus, the TDSP Order has no effect on the amount or type of benefits that will be paid. This means that the Order satisfies the requirements of 29 U.S.C. § 1056(d)(3)(D) and *Samaroo* is not applicable.

Andrew and Emily suggest that *Samaroo* holds that QDRO's can never be applied retrospectively. This is not correct. In response to a vigorous dissent, the *Samaroo* majority expressly noted that its holding was limited to the facts at hand. *See id.* at 190 n. 3. Thus, the court did not hold that a QDRO may never be modified after the death of the plan participant. *See id.* Moreover, even if *Samaroo* did so hold, this would be inconsistent with the weight of federal authority. *See Patton,* 326 F.3d at 1151–54; *Hogan,* 302 F.3d at 857; *Tise,* 234 F.3d at 422

Finally, *Rivers* is also inapposite. *Rivers* involved an attempt to divest and transfer benefits that had vested in a subsequent spouse over 24 years before. *See Rivers,* 186 F.3d at 682–83. Moreover, a *nunc pro tunc* QDRO was never entered in that case. *See id.* at 682. Thus, that case raised quite different statutory and policy considerations than those applicable here. *See Tise,* 234 F.3d at 423 n. 6..

The TDSP Order satisfies all the statutory requirements of a QDRO. Moreover, the weight of authority strongly supports the view that a QDRO may be entered retrospectively after the death of a plan participant. Thus, the Court holds that the TDSP Order is a valid QDRO. This means that Lucy is entitled to 50% of the increase in the TDSP savings account bal-

ance from September 16, 1989 through January 13, 2003.

## B. Attorney's Fees

Lucy asks the Court to award her attorney's fees in this matter. Lucy suggests that attorney's fees are appropriate as Andrew and Emily have not demonstrated a colorable claim to the benefits at issue. Lucy did not provide any further argument or support for her fee request.

 Pursuant to 29 U.S.C. § 1132(g)(1) the Court has discretion to award reasonable attorney's fees to either party in an ERISA action. In the Second Circuit, a district court should evaluate a fee request under the test outlined in *Chambless v. Masters, Mates & Pilots Pension Plan,* 815 F.2d 869 (2d Cir.1987). The relevant factors are: (1) the degree of culpability or bad faith; (2) the ability of the offending party to satisfy an award of attorney's fees; (3) whether a fee award would deter similar behavior; (4) the relative merits of the parties' positions; and (5) whether the action conferred a common benefit on a group of pension plan participants. *Chambless,* 815 F.2d at 871; *see also Seitzman v. Sun Life Assurance Co. of Canada, Inc.,* 311 F.3d 477, 482 (2d Cir.2002).

 The Court finds that a fee award is not warranted. Although the Court did not agree with the legal position advanced by Andrew and Emily, their arguments were not without merit. They correctly noted that at least some courts have refused to recognize retroactive QDRO's. Thus, the first and fourth factors do not favor a fee award.

Similarly, the third factor favors Andrew and Emily. The Court does not wish to deter ERISA claimants from bringing viable, but ultimately unsuccessful, claims. *See Seitzman,* 311 F.3d at 485–86 (noting

that the Second Circuit has cautioned against awarding fees where a claimant has brought a colorable but unsuccessful claim). These considerations show that a fee award is not appropriate in this case.

### C. Calculating the Amount Payable to the Parties

The Court has determined that Lucy is entitled to 50% of the increase in the TDSP savings account balance from September 16, 1989 through January 13, 2003. Unfortunately, the information required to calculate this figure is not readily available. Thus, as both sides have noted, the Court cannot decide this issue on summary judgment.

The parties have indicated that IBM does not have records of the account from prior to September 30, 1996. The records that do exist suggest that the account balance was $76,781.51 on September 30, 1996 and was $147,364.03 on the date of the divorce, January 21, 2003. This shows that Lucy is entitled to $35,291.26 plus half of any increase in value from September 16, 1989 through September 30, 1996 (minus any increase during the eight days immediately prior to the divorce).

Lucy has informed the Court that she has additional information that may assist the Court's calculation. Before the Court holds a hearing on this matter, however, the parties are directed to confer on this issue. The parties now have a clear formula for calculating the distribution of benefits. The parties should confer and attempt to reach an agreement on how the funds should be distributed. If the parties reach an agreement, then they should submit a stipulation to the Court. If they are unable to agree, the Court will schedule an evidentiary hearing on this matter.

### *Conclusion*

For the foregoing reasons, defendant Lucy Price's motion for summary judgment (Doc. 13) is GRANTED IN PART and DENIED IN PART. The Court finds that Lucy is entitled to 50% of the increase in the TDSP savings account balance from September 16, 1989 through January 13, 2003. The Court denies Lucy's request for an award of attorney's fees. Andrew and Emily Price's motion for summary judgment (Doc. 16) is DENIED. The parties are directed to confer regarding the distribution of the funds. The parties should inform the Court if they have reached an agreement within 20 days from the date of this order.