# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 18-30942

United States Court of Appeals
Fifth Circuit

**FILED**
April 16, 2019

Lyle W. Cayce
Clerk

PAM MILETELLO,

> Plaintiff - Appellant

v.

R M R MECHANICAL, INCORPORATED; SANDRA BELLGARD
MILETELLO,

> Defendants - Appellees

Appeal from the United States District Court
for the Western District of Louisiana

Before BARKSDALE, SOUTHWICK, and HAYNES, Circuit Judges.

HAYNES, Circuit Judge:

This case is a dispute between decedent Gerald Miletello's ex-wife Sandra and widow Pam about who is entitled to the funds in Gerald's 401(k) retirement account. The dispute hinges on the existence and timing of a "qualified domestic relations order," or QDRO, which is controlled by federal law. The district court granted summary judgment in favor of Sandra, concluding that she had timely received a QDRO. For the reasons set forth below, we AFFIRM the district court's judgment that Sandra is entitled to $500,000 of the 401(k) balance.

No. 18-30942

## I.   Background

### A. The ERISA Regulatory Scheme

The Employee Retirement Income Security Act of 1974 ("ERISA") is a comprehensive federal statute that regulates employee benefit plans. *Boggs v. Boggs*, 520 U.S. 833, 841 (1997).   It covers defined contribution plans like 401(k) accounts.   *See LaRue v. DeWolff, Boberg & Assocs., Inc.*, 552 U.S. 248, 250 (2008).   ERISA generally prohibits the assignment or alienation of employee benefits under covered plans.   29 U.S.C. § 1056(d)(1).   It also preempts state laws that "relate to" employee benefit plans.   *Id.* § 1144(a).

But those prohibitions do not apply in the case of a QDRO.   *Id.* §§ 1056(d)(3)(A), 1144(b)(7).  A QDRO is a type of domestic relations order, or DRO.  A DRO "is any judgment, decree, or order that concerns 'the provision of child support, alimony payments, or marital property rights to a spouse, former spouse, child, or other dependent of a participant' and is 'made pursuant to a State domestic relations law (including a community property law).'" *Boggs*, 520 U.S. at 846 (quoting 29 U.S.C. § 1056(d)(3)(B)(ii)).  A QDRO, in turn, "is a type of domestic relations order that creates or recognizes an alternate payee's right to, or assigns to an alternate payee the right to, a portion of the benefits payable with respect to a participant under a plan." *Boggs*, 520 U.S. at 846 (citing § 1056(d)(3)(B)(i)).  Under a QDRO, the alternate payee is considered a beneficiary of the relevant plan.   29 U.S.C. § 1056(d)(3)(J).  The "alternate payee" may be a "spouse, former spouse, child, or other dependent of a participant." *Id.*  § 1056(d)(3)(K).

A DRO must satisfy certain requirements to be a QDRO. *Boggs*, 520 U.S. at 846; 29 U.S.C. § 1056(d)(3)(B)–(D).  ERISA states:

> During any period in which the issue of whether a [DRO] is a [QDRO] is being determined (by the plan administrator, by a court of competent jurisdiction, or

otherwise), the plan administrator shall separately account for the amounts (hereinafter . . . the "segregated amounts") which would have been payable to the alternate payee during such period if the order had been determined to be a [QDRO].

29 U.S.C. § 1056(d)(3)(H)(i). ERISA provides an eighteen-month period for determining whether a DRO is a QDRO. *Id.* § 1056(d)(3)(H)(i)–(v). The eighteen-month period "begin[s] with the date on which the first payment would be required to be made under the [DRO]." *Id.* § 1056(d)(3)(H)(v). If during that period, the DRO is determined to be a QDRO, the plan administrator must pay the segregated amounts to the person entitled to them under the QDRO. *Id.* § 1056(d)(3)(H)(ii). But if (1) the DRO is determined to not be a QDRO, or (2) the issue is unresolved by the time the eighteen-month period expires, the plan administrator must pay the segregated amounts to the person "who would have been entitled to [them] if there had been no order." *Id.* § 1056(d)(3)(H)(iii). Finally, if a DRO is determined to be a QDRO after the eighteen-month period has expired, such a determination "shall be applied prospectively only." *Id.* § 1056(d)(3)(H)(iv).

### B. Factual Background

Gerald Miletello and Appellee Sandra Bellgard Miletello were married. Gerald participated in a 401(k) plan set up and administered by Appellee RMR Mechanical, Inc. ("RMR"). He designated Sandra as the beneficiary of the Plan.

Sandra and Gerald divorced on January 21, 2014. Gerald married Appellant Pam Miletello four months later, in May 2014. As part of the divorce, Sandra and Gerald agreed to a community property settlement (the "Divorce Settlement"). The Divorce Settlement awarded $500,000 of the funds in the 401(k), or the balance of the 401(k) if it was less than $500,000, to Sandra. Gerald and Sandra executed the Divorce Settlement on April 20, 2015,

No. 18-30942

and May 4, 2015, respectively.

Gerald died in a plane crash on October 26, 2015. Shortly thereafter, on October 28, 2015, the state court entered a judgment of partition incorporating the terms of the Divorce Settlement into the divorce decree.

On November 22, 2016, Pam sued in federal court to claim the 401(k) funds as Gerald's surviving spouse. The court later granted RMR's motion to deposit the disputed funds into the court registry pending resolution of this dispute.

On January 18, 2017, the state court entered a QDRO pursuant to the Divorce Settlement. The QDRO granted Sandra $500,000 of the 401(k) funds. On August 1, 2017, the state court issued an "Amended QDRO" providing that it "shall have retroactive effect and be a *nunc pro tunc* order with an effective date of May 4, 2015," the day the Divorce Settlement was executed.

Pam and Sandra filed cross-motions for summary judgment. The district court entered summary judgment for Sandra. Pam now appeals.

## II.    Standard of Review

We review a district court's grant of summary judgment *de novo*. *Martinez v. Tex. Workforce Comm'n-Civil Rights Div.*, 775 F.3d 685, 687 (5th Cir. 2014). In so doing, "[w]e view all facts and evidence in the light most favorable to the non-moving party." *Ferraro v. Liberty Mut. Fire Ins. Co.*, 796 F.3d 529, 531 (5th Cir. 2015). In the absence of any genuine dispute of material fact, the movant is entitled to prevail if she proves that she is correct as a matter of law. FED. R. CIV. P. 56(a).

## III.    Discussion

The core question in this case is whether Sandra timely obtained a QDRO. Pam argues that Sandra cannot claim any 401(k) funds because she did not receive a QDRO within eighteen months of the October 28, 2015,

No. 18-30942

judgment of partition—the event that Pam says starts the clock for determining whether a DRO is a QDRO. *See* 29 U.S.C. § 1056(d)(3)(H)(i)–(v).[1] Even if we assume Pam is correct that the eighteen-month window began on that date, Sandra received a QDRO within that time frame. Though the October 2015 judgment of partition was not a QDRO for technical reasons,[2] it explicitly contemplated Sandra's later seeking a QDRO to receive the 401(k) funds. She obtained that QDRO on January 18, 2017. Even under Pam's proposed starting date, Sandra timely received a QDRO.

Pam incorrectly asserts that the January 18, 2017 QDRO cannot be effective because it post-dates Gerald's death. She relies on *Rivers v. Central & South West Corp.*, 186 F.3d 681 (5th Cir. 1999), in support of her argument. *Rivers* had very different facts from those here. There, a husband and wife were married while the husband earned a pension at a company. *Id.* at 682. They divorced more than a decade before he retired. *Id.* Their divorce settlement did not address his pension. *Id.* He remarried while still earning a pension. *Id.* He retired, received payments under the pension, and died years later. *Id.* His ex-wife requested a QDRO a decade after he died. *Id.* We affirmed summary judgment against her, concluding that she had "failed to protect her rights . . . by neglecting to obtain a QDRO" before her ex-husband retired. *Id.* at 683.

Since *Rivers* was decided, Congress has modified ERISA to make "clear that a QDRO will not fail solely because of the time at which it [was] issued."

---

[1] The statute provides that a court of competent jurisdiction may determine whether a DRO is a QDRO. *Id.* § 1056(d)(3)(H)(i). But here, the Plan states that payment under a DRO will occur after the DRO "is accepted as a QDRO by the *Plan Administrator*."

[2] The judgment of partition did not contain "the last known mailing address (if any) of the participant and the name and mailing address of each alternate payee covered by the order." *See id.* § 1056(d)(3)(C)(i).

No. 18-30942

*Yale-New Haven Hosp. v. Nicholls*, 788 F.3d 79, 85 (2d Cir. 2015) (citing Pension Protection Act of 2006, Pub. L. No. 109-280, § 1001, 120 Stat. 780 (2006)); *see also* 29 C.F.R. § 2530.206(c)(2) (stating that an "order does not fail to be treated as a QDRO solely because it is issued after the death of the Participant . . . even if no order [was] issued before the Participant's death").[3] "The QDRO provisions of ERISA do not suggest that [the former spouse] has no interest in the plans until she obtains a QDRO, they merely prevent her from enforcing her interest until the QDRO is obtained." *Nicholls*, 788 F.3d at 86 (alteration in original) (quoting *In re Gendreau*, 122 F.3d 815, 818 (9th Cir. 1997) (emphasis omitted)). We thus reject Pam's argument that the January 18, 2017 QDRO is insufficient.

## IV.    Conclusion

For the foregoing reasons, we AFFIRM the district court's judgment awarding $500,000 of the 401(k) funds to Sandra.[4]

---

[3] We need not decide whether this legislation and regulation abrogate *Rivers*. The facts there are so egregious as to be different from this case.

[4] In passing, Sandra argues she is entitled to the entire 401(k). A party who desires greater relief than what the district court awards must appeal or cross-appeal the district court's order. *See Robicheaux v. Radcliff Material, Inc.*, 697 F.2d 662, 667–68 (5th Cir. 1983). Sandra did not cross-appeal, so we do not consider her argument.