Filed 2/1/21  Marriage of Pallo CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re Marriage of JODY L. and ROBERT J. PALLO. | |
| JODY L. PALLO,<br><br>　　Appellant,<br><br>　　　v.<br><br>ROBERT J. PALLO,<br><br>　　Respondent. | G058738<br><br>(Super. Ct. No. 11D000767)<br><br>O P I N I O N |

　　　　　Appeal from a postjudgment order of the Superior Court of Orange County, Nathan T. Vu, Judge.  Affirmed.

　　　　　Gary Paul Levinson; and William E. Cavanaugh for Appellant.

　　　　　C&K Law Group, Christopher K. Jafari and Kiarash Jafari for Respondent.

　　　　　　　　　　*　　　　　*　　　　　*

INTRODUCTION

When they divorced, Jody L. Pallo and Robert J. Pallo entered a marital settlement agreement (the MSA) dividing their property; the MSA was approved as a stipulated judgment by the trial court. More than six years later, Jody[1] filed a motion to set aside the stipulated judgment on the ground Robert had failed to disclose the existence of a community property asset—his pension. The trial court found that the motion to set aside was untimely, and that Jody had been aware of the existence of the pension at the time the parties entered into the MSA.

Jody appeals from the postjudgment order denying her motion. Substantial evidence supports the trial court's findings. We reject Jody's claim that the Employee Retirement Income Security Act (ERISA) preempts her waiver of a right to the pension. Therefore, we affirm the denial of the motion to set aside the judgment.

Jody's motion to set aside was made under Family Code section 2122 "on the grounds of Failure to Comply with Disclos[ure] Requirements of Chapter 9, Breach of Fiduciary Duty, Fraud, and/or as an Omitted Property Adjudication pursuant to Fam. Law Section 2556." Jody did not make a request under Family Code section 2556 that the trial court adjudicate the allegedly omitted property, and the court did not make any findings on this issue. We will not make any factual findings in the first instance on appeal. Our opinion is without prejudice to either party filing the proper request for adjudication of an omitted asset with the trial court.

---

[1] We will refer to the parties by their first names to avoid confusion; we intend no disrespect.

I.

*BACKGROUND*

Jody and Robert married in 1976, and a petition for dissolution of the marriage was filed in January 2011. Their divorce was finalized in April 2012. The parties signed an MSA that became a judgment of the court. The two primary assets divided by the MSA were the parties' residence and a 401(k) account at Allergan, Robert's employer. Robert was awarded the 401(k), and Jody was awarded the residence and an equalizing payment from the 401(k). Robert was ordered to pay Jody $4,200 per month in spousal support.

Sometime before April 2014, Robert remarried.

II.

*THE MSA*

The relevant portions of the MSA provide:

"HUSBAND shall receive as his separate property all of the items set forth below: [¶] . . . [¶] 3. Any and all community property interest in HUSBAND's Retirement/Pension/401(k) with Allergan, which shall be subject to the equalization payment and a QDRO, as described below."

"The community and/or co-owned interest in HUSBAND's Allergan Retirement/Pension/401(k) accounts shall be awarded to HUSBAND subject to the transfer of the amount of $65,000 to WIFE as her portion of the community property interest in HUSBAND's retirement account, after accounting for all equalization. If a Qualified Domestic Relations Order is necessary to accomplish this division, Richard Muir shall be appointed pursuant to Evidence Code § 730 to prepare the Qualified Domestic Relations Orders dividing any accounts including 401(k), pension and deferred compensation benefits of HUSBAND as may be required. HUSBAND shall pay the costs associated with said Qualified Domestic Relations Orders. Richard Muir shall seek

3

approval from the plan(s) for Qualified Domestic Relations Order and present plan approved orders to the Court without the signature of Parties or counsel. Parties shall have ten (10) days from date of service to object to the entry of the proposed order by this Court. Mr. Muir shall have the authority to account for and trace any funds related to this account, and to obtain subsequent orders for the recovery and/or division of any funds withdrawn and/or transferred after the Date of Separation." (Italics omitted.)

"Each Party warrants that neither of them is now possessed of any community property of any kind or description other than the property specified in this Agreement."

"The court shall have continuing jurisdiction to award community assets or liabilities that have not been divided in this Agreement pursuant to the provisions of California Family Code § 2556." (Italics omitted.)

"Each Party warrants that he or she has made a full and accurate disclosure to the other pursuant to the Family Code § 2100 of all assets, liabilities, and encumbrances, and their values, in which one or both Parties have or may have an interest, and each has made a full and accurate disclosure of his or her income. The Parties warrant that they have met their duty pursuant to Family Code § 2100 to update and augment that information including advising the other of any material facts that could substantially affect the value of any asset up until the time of this Agreement." (Italics omitted.)

"The Parties understand that they have a right to discovery, which includes taking depositions, submitting interrogatories, obtaining documents, requesting admissions, using subpoenas, and obtaining appraisals. They have chose[n] not to exercise any further right to discovery or conduct any investigation beyond that already performed. The Parties each understand that by failure to engage in discovery either one may not fully appreciate the full extent of the assets and debts of the Parties subject to the court's jurisdiction or the character and value of each asset and debt. Each Party

4

understands that this lack of knowledge may mean that the division of community property is not equal, that the level of support provided may be less than fully available under law, or that either one may not have received the optimum settlement to which he or she is entitled under California law."

"If a judgment of dissolution of marriage is obtained by either Party, the original of this Agreement or a copy shall be attached to the stipulated or proposed judgment. The court will be requested to (i) approve the entire Agreement as fair and equitable; (ii) order each Party to comply with all of its executory provisions; and (iii) merge the provisions of the Agreement into the court's judgment. Notwithstanding the merger of the Agreement into the judgment, the Parties expressly agree that the warranty and indemnity provisions and all executory provisions of the Agreement shall survive the merger and entry of judgment, and shall be enforceable in contract, tort, or as otherwise provided by law."

"This Agreement is intended to be the final, complete, and exclusive agreement of the Parties on the matters it covers. It supersedes any previous or contemporaneous oral or written agreements between the Parties with respect to these matters. There are no representations, warranties, promises, or agreements with respect to these matters, except as set forth in this Agreement."

III.

*POSTJUDGMENT MOTIONS*

In April 2014, Robert filed a motion to modify spousal support downward; the parties stipulated to reduce the monthly spousal support to $3,526, and the trial court entered an order on that stipulation. Robert filed a second request to decrease spousal support in May 2018. Robert alleged a change in circumstances due to the termination of his employment from Allergan. Robert listed a pension from Allergan as his source of income. (Ultimately, the parties stipulated to reduce the spousal support to $2,500 per month.)

5

In September 2018, Jody filed a motion to set aside the judgment incorporating the MSA on the ground that the pension was an omitted marital asset subject to division, and that Robert committed fraud and breach of fiduciary duty by failing to disclose the existence of the pension. Robert took the deposition of Kenneth Burgi, the attorney who represented Jody in connection with the MSA. Burgi testified (1) he was aware of the existence of Robert's pension plan at Allergan, (2) he believed he had shared that information with Jody, and (3) the MSA awarded that pension to Robert, subject to Jody's equalizing payment.

In a supplemental brief, Jody argued that the case was governed by ERISA and *Kennedy v. Plan Administrator for DuPont Savings and Investment Plan* (2009) 555 U.S. 285 (*Kennedy*), and that any waiver of the pension in the MSA was preempted.

IV.

*THE TRIAL COURT DENIES JODY'S MOTION TO SET ASIDE*

In November 2019, Jody's motion to set aside finally came before the trial court for hearing.

The court's minute order reads, in relevant part, as follows:

"[Jody] seeks to set aside the Judgment entered 04/10/12 ("Judgment") based on failure to disclose, presumably pursuant to Family Code section 2122(f). [¶] . . . [¶]

"[Jody] claims that she was never informed of the existence of [Robert]'s Allergan Pension Plan ('Pension') and was only made aware of [Robert]'s Allergan 401(k) Plan. [Robert] argues that the Marital Settlement Agreement ('MSA'), attached to the Judgment, constituted a clear waiver of [Jody's] rights to any pension and no parol evidence is needed on this point, and in any case, that [Jody] and her counsel at the time were made aware of the existence of the Pension at the time the MSA was negotiated.

"As to [Robert]'s first argument, the issue is not whether the waiver was clear but whether the MSA clearly disclosed the existence of the Pension to [Jody].

6

There is no clear statement in the MSA of the existence of the Pension. At best, the MSA mentions '[a]ny and all community property interest in Husband's Retirement/Pension/401(k) with Allergan.' No further specifics as to the pension are given and it cannot be said that the MSA made a clear disclosure of the Pension.

"However, as to the second argument, the uncontradicted evidence is that [Jody]'s attorney at the time of the MSA, Kenneth Burgi, was given papers relating to the Pension by both [Jody] and [Robert]. Mr. Burgi also testified that, at the time, he understood [Robert] to have the Pension and that he discussed the Pension with [Jody]. Thus, both [Jody] and her counsel were aware of the Pension and took it into account in negotiating the MSA. But even if [Jody] argues that she was not aware of the Pension at the time the MSA was negotiated, it is uncontradicted that the Pension was disclosed to Mr. Burgi at that time. As her attorney and agent, Mr. Burgi's knowledge is imputed to [Jody]. [Citations.]

"In addition, a Motion to Set Aside Judgment pursuant to [Family Code] 2122(f) must be 'brought within one year after the date on which the complaining party either discovered, or should have discovered, the failure to comply.' Here, [Jody] and her counsel learned of the Pension at the time the MSA was negotiated in 2014. The Motion to Set Aside was brought five years later and is therefore untimely.

"Finally, [Jody] argues that Kennedy vs. Plan Administrator for DuPont Savings and Investment Plan ['Kennedy'] (2009) 129 S.Ct. 865 requires that the Judgment as [to] the Pension be set aside because [Jody]'s waiver is inconsistent with the Employee Retirement Income Security Act of 1974 ('ERISA').

"The Kennedy case, however, does not require the Court to set aside the Stipulated Judgment. As the Supreme Court in Kennedy made clear, ERISA controls the conduct of the plan administrator and the plan administrator's relationship to the employee and any beneficiaries. ERISA does not control the relationship between an employee and the beneficiaries, such as an employee's former spouse. The Supreme

7

Court in Kennedy expressly disclaimed making a determination whether the former spouse's waiver of pension benefits was valid under state law. [Citation.]

"The Supreme Court similarly rejected an argument that ERISA pre-empted state law in this context and required the invalidation of the waiver. [Citation.] The Supreme [Court] acknowledged that the waiver might have one effect in federal court and a different effect in state court. [Citation.]

"Contrary to [Jody]'s argument, the Supreme Court expressly rejected the argument that ERISA's anti-alienation and anti-assignment provision, 29 U.S.C. § 1056(d)(1), invalidated a former spouse's waiver. The Supreme Court found that because a waiver of pension benefits is not an assignment or alienation, ERISA's anti-alienation and anti-assignment provision did not apply in this context. [Citation.]

"In the end, the Supreme Court based its decision on the fact that ERISA required that plans be 'established and maintained pursuant to a written instrument . . . specify[ing] the basis on which payments are made to and from the plan.' [Citation.] In Kennedy, the employee had not made the change in designation required by the written instrument and the employee had passed away, so that there could not be compliance with the rules in the written instrument. Even then, the Supreme Court noted that it might be possible for the employee's estate to sue the former spouse for the distribution of pension benefits based on the waiver. [Citation.] However, that is not an issue here, where [Robert] is still alive and could abide by any rules required by the written instrument of the Allergan Pension Plan. [¶] . . . [¶]

"The Court therefore DENIES [Jody]'s Motion to Set Aside the Judgment as to the Pension."

Jody appealed from the trial court's order denying her motion to set aside the judgment.

DISCUSSION

I.

*STANDARDS OF REVIEW*

A trial court's ruling on a motion to set aside a judgment is reviewed for abuse of discretion. (*In re Marriage of Varner* (1997) 55 Cal.App.4th 128, 138.) The trial court's factual findings are reviewed under the substantial evidence test. (*In re Marriage of Rossin* (2009) 172 Cal.App.4th 725, 734; *In re Marriage of Duffy* (2001) 91 Cal.App.4th 923, 931.) The de novo standard of review applies to whether ERISA preempts state law. (*Port Medical Wellness, Inc. v. Connecticut General Life Ins. Co.* (2018) 24 Cal.App.5th 153, 169; *In re Marriage of Padgett* (2009) 172 Cal.App.4th 830, 839.)

II.

*JODY'S MOTION TO SET ASIDE THE JUDGMENT WAS UNTIMELY.*

Family Code section 2122[2] provides the grounds and timing for a motion to set aside a judgment. In her motion to set aside, Jody relied on two different subdivisions of section 2122: "(a) Actual fraud where the defrauded party was kept in ignorance or in some other manner was fraudulently prevented from fully participating in the proceeding. An action or motion based on fraud shall be brought within one year after the date on which the complaining party either did discover, or should have discovered, the fraud. [¶] . . . [¶] (f) Failure to comply with the disclosure requirements . . . . An action or motion based on failure to comply with the disclosure requirements shall be brought

---

[2] Jody did not seek relief under Code of Civil Procedure section 473; her motion would have been untimely under that statute as well.

within one year after the date on which the complaining party either discovered, or should have discovered, the failure to comply." (Fam. Code, § 2122, subds. (a), (f).)[3]

The trial court found that Jody, directly or through her agent, learned of the existence of the Allergan pension at the time the MSA was negotiated in 2014, and, as a result, her motion to set aside was untimely under Family Code section 2122.

In his deposition, Burgi, Jody's attorney at the time the MSA was negotiated and signed, testified that (1) the pension mentioned in the MSA was one of the components of Robert's retirement package, (2) Burgi received statements from Robert showing the existence of the pension plan, (3) the MSA provided that Robert would receive his retirement, including the pension, subject to the equalizing payment to Jody, (4) Richard Muir was chosen by the parties to prepare and present to the court any necessary Qualified Domestic Relations Order (QDRO) for accounts "including 401(k), pension and deferred compensation benefits," (5) Jody provided Burgi with a copy of the Allergan Pension Plan for 2009, (6) Robert provided his disclosures, income expense declarations, and his schedule of debts and assets to Burgi, (7) Robert provided Burgi with a document showing his monthly pension benefits, and Burgi "believed" that he shared the information with Jody, and (8) Robert's pension benefits were disclosed to Burgi before the MSA was signed. At the deposition, Burgi identified several documents that were provided to him by Jody or Robert before the MSA was signed and refer to the Allergan pension.

Jody's declaration, filed before Burgi's deposition was taken, stated in relevant part: "I believed we had never been eligible for a pension along with our 401K SIP plan. Nowhere in our divorce documents did I see any written or verbal description

_____

[3] Family Code section 2122, subdivision (e) allows a motion to set aside a stipulated judgment based on mutual or unilateral mistakes of fact or law, but requires such a motion to be brought within one year after the judgment is entered. Due to the time limitation, this option was not available to Jody.

10

regarding its existence, its proper name, nor of any value assigned to it." The appellate record does not contain any further declaration from Jody refuting Burgi's testimony and written evidence regarding the Allergan pension.

It is a general rule of agency that knowledge of the agent is imputed to the agent's principal; this rule applies in the context of an attorney-client relationship. (*Freeman v. Superior Court* (1955) 44 Cal.2d 533, 537-538.) If an agent acquires information that it is his or her duty to communicate to the principal, a conclusive presumption arises that he or she has performed that duty. (*Id.* at p. 538; *Lazzarevich v. Lazzarevich* (1952) 39 Cal.2d 48, 50; *Wittenbrock v. Parker* (1894) 102 Cal. 93, 104.)

Substantial evidence supports the trial court's finding that Jody and her counsel were aware of the existence of the Allergan pension before signing the MSA. Therefore the trial court did not err by concluding that the motion to set aside was not timely under Family Code section 2122.

III.

*ERISA DOES NOT REQUIRE THAT THE STIPULATED JUDGMENT BE SET ASIDE.*

Jody argues that the language of the MSA does not constitute a waiver of her rights to the Allergan pension survivor benefit under ERISA. We agree with the trial court that ERISA does not require that the stipulated judgment be set aside.

Jody relies primarily on the United States Supreme Court's opinion in *Kennedy, supra,* 555 U.S. 285. But that case is not on point. In *Kennedy*, the decedent had participated in an employee benefit plan covered by ERISA while employed by DuPont. (*Id.* at p. 289.) The decedent signed a form designating his then-wife to take his benefits under the plan; no contingent beneficiary was named. (*Ibid.*) When they divorced sometime later, the ex-wife agreed to be divested of any all and right to any of the decedent's pension or retirement plans. (*Ibid.*) The decedent never executed a new beneficiary form, however. (*Ibid.*)

11

After the decedent died, the plan administrator paid the balance of the employee benefit plan to the ex-wife, rather than to the decedent's executrix. (*Kennedy, supra,* 555 U.S. at pp. 289-290.) The executrix sued the plan administrator, claiming the divorce decree was a waiver of rights to the plan benefits by the ex-wife. (*Id.* at p. 290.) The district court entered summary judgment for the estate and ordered the decedent's employer and the plan administrator to pay the benefits to the estate. (*Ibid.*) The Fifth Circuit, reversing the judgment, held that the divorce decree was an impermissible alienation or assignment of the ex-wife's interest in the plan benefits to the estate under ERISA. (*Id.* at pp. 290-291.)

The United States Supreme Court rejected the alienation or assignment argument (*Kennedy, supra,* 555 U.S. at pp. 296-297), but nevertheless affirmed the Fifth Circuit's holding because the plan administrator had paid the benefits to the ex-wife in conformity with the plan documents (*id.* at pp. 299-300). The Court concluded that a bright-line rule requiring the plan administrator to pay out benefits to the person or persons designated using the plan's official forms would lead to consistency and would prevent the plan administrator from having to decide when and how various state laws should be interpreted. (*Id.* at pp. 300-304.)

Thus, *Kennedy* holds that a plan administrator may rely on the plan documents and forms signed by the participant, and need not consider whether or how a beneficiary can waive the right to an ERISA-covered benefit. *Kennedy* specifically notes that ERISA does not preempt later litigation between the named beneficiary and anyone else whose rights are affected by an agreement, such as the MSA in this case. (*Kennedy, supra*, at p. 299, fn. 10, citing *Sweebe v. Sweebe* (Mich. 2006) 712 N.W.2d 708, 712-713, *Pardee v. Pardee* (Ok. 2004) 112 P.3d 308, 313-314, 315-316.)

With one exception, all the other cases cited by Jody in support of her argument arose after the death of the named plan participant. (*Midamerican Pension & Employee Benefits v. Cox* (8th Cir. 2013) 720 F.3d 715; *Carmona v. Carmona* (9th Cir.

12

2010) 603 F.3d 1041; *Hamilton v. WA State Plumbing Pension Plan* (9th Cir. 2006) 433 F.3d 1091; *Patton v. Denver Post Corp.* (10th Cir. 2003) 326 F.3d 1148; *Trustees of the Directors Guild of America v. Tise* (9th Cir. 2000) 234 F.3d 415; *Samaroo v. Samaroo* (3d Cir. 1999) 193 F.3d 185; *Lasche v. George W. Lasche Basic Profit Sharing Plan* (11th Cir. 1997) 111 F.3d 863; *Torres v. Torres* (2002) 100 Hawaii 397 [60 P.3d 798].) The issues before these courts were disputes between the plan administrators and the claimed beneficiaries, rather than between the plan participants and the claimed beneficiaries.  Moreover, the cases address the time period when changes by the plan participants are impossible.

Two of the cases Jody cites appear to require that this court affirm the trial court's postjudgment order.  Paul and Vera Hopkins divorced in 1986.  (*Hopkins v. AT&T Global Information Solutions Co.* (4th Cir. 1997) 105 F.3d 153, 154 (*Hopkins*).) Paul's pension in his current employer was noted as a marital asset, but was not awarded in full or in part to Vera.  (*Ibid.*)  Vera obtained a judgment, which she used to garnish Paul's wages to recover her alimony.  (*Id.* at pp. 154-155.)  After Paul retired, Vera obtained a court order allowing her to collect her alimony and arrears from Paul's pension.  (*Ibid.*)  On appeal, the Fourth Circuit concluded that the surviving spouse benefits in the pension had vested in Paul's second wife as of the date of his retirement and could not be reached by Vera.  (*Id.* at pp. 156-157.)

Similarly, in *Rivers v. Central & South West Corp.* (5th Cir. 1999) 186 F.3d 681, 682 (*Rivers*), Rheba Rivers and her ex-husband Perry Franklin entered a community property settlement agreement when they divorced; the agreement did not address Franklin's pension.  Franklin remarried in 1972, retired in 1983, and died in 1987.  (*Ibid.*) Rivers sued to recover Franklin's pension, which she claimed was community property. (*Ibid.*)  The Fifth Circuit, following the analysis and holding of *Hopkins*, concluded that "Franklin's pension benefits irrevocably vested in [the second] Mrs. Franklin on the date

13

of his retirement and Rivers is forever barred from acquiring an interest in Franklin's pension plan." (*Rivers, supra*, 186 F.3d at p. 684.)

Under the holdings of *Hopkins* and *Rivers*, it would appear that ERISA prohibits Jody from acquiring any interest in Robert's pension because she failed to obtain a QDRO before the pension benefits were vested in Robert's current wife.

IV.

*FAMILY CODE SECTION 2556*

Family Code section 2556 gives the trial court continuing jurisdiction over unadjudicated community assets.[4] The right to request division of an unadjudicated community asset exists even if the parties were aware of the existence of the asset. "Regardless of whether the parties know of, or discuss, the vested pension, if the 'court was not called upon to award it, and did not award it, as community property, separate property, or any property at all' [citation], then the pension is a missed asset subject to a postdissolution claim." (*Huddleson v. Huddleson* (1986) 187 Cal.App.3d 1564, 1569; see *Henn v. Henn* (1980) 26 Cal.3d 323, 330.)

Jody relies on *In re Marriage of Huntley* (2017) 10 Cal.App.5th 1053, in which the parties were aware of all their community assets, none of which was mentioned in the default judgment dissolving their marriage. (*Id.* at pp. 1056-1057.) The trial court denied the wife's later motion to adjudicate omitted assets. (*Id.* at pp. 1057-1058.) The appellate court held that under Family Code section 2556, the wife was not required to

---

[4] "In a proceeding for dissolution of marriage, for nullity of marriage, or for legal separation of the parties, the court has continuing jurisdiction to award community estate assets or community estate liabilities to the parties that have not been previously adjudicated by a judgment in the proceeding. A party may file a postjudgment motion or order to show cause in the proceeding in order to obtain adjudication of any community estate asset or liability omitted or not adjudicated by the judgment. In these cases, the court shall equally divide the omitted or unadjudicated community estate asset or liability, unless the court finds upon good cause shown that the interests of justice require an unequal division of the asset or liability." (Fam. Code, § 2556.)

14

seek to set aside the default judgment before the trial court could adjudicate the omitted assets. (*In re Marriage of Huntley, supra,* at p. 1061.) The court further held that, although the parties had informally agreed to divide their community assets, unless the property division was made in writing or orally stated in open court, the trial court retained the statutory duty to divide the property. (*Id.* at p. 1062.)

In the minute order in this case, the trial court acknowledged "[t]here is no clear statement in the MSA of the existence of the Pension. . . . [I]t cannot be said that the MSA made a clear disclosure of the Pension." The court also found that Jody knew directly or through her agent Burgi that the Allergan pension existed. However, the issue of whether the Allergan pension was an omitted asset subject to Family Code section 2556 was never properly raised before the trial court, and we will not make factual findings regarding the issue for the first time on appeal. Nothing in this opinion is intended to suggest that the pension was or was not an omitted asset.

DISPOSITION

The postjudgment order denying the motion to set aside the judgment under Family Code section 2122 is affirmed. Respondent to recover costs on appeal.


FYBEL, ACTING P. J.

WE CONCUR:


THOMPSON, J.


GOETHALS, J.

15